UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

QUANTUM PARK PROPERTY OWNERS'        CASE NO.
ASSOCIATION, INC., a/k/a QUANTUM PARK
OWNERS ASSOCIATION,

      Plaintiff,

v.

UNITED STATES LIABILITY INSURANCE
COMPANY,

      Defendant.

_____/

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Quantum Park Property Owners' Association, Inc., a/k/a Quantum Park Owners Association ("QPPOA"), sues defendant, United States Liability Insurance Company, and says:

### JURISDICTION, PARTIES AND VENUE

1.      This is an action for declaratory judgment pursuant to 28 USC §2201 and 28 USC §2202 to determine an actual controversy between the parties.

2.      QPPOA is a Florida corporation whose principal place of business is in Boynton Beach, Palm Beach County, Florida.  QPPOA is a citizen of the State of Florida.

3.      United States Liability Insurance Company ("USLIC") is an active Pennsylvania corporation whose principal place of business is in Wayne, Delaware County, Pennsylvania. USLIC is a citizen of the State of Pennsylvania.

4.      The amount in controversy exceeds $75,000.00, exclusive of attorneys' fees, interest and costs. This Court has jurisdiction of this matter pursuant to 28 USC §1332.

### FACTUAL ALLEGATIONS

5.      QPPOA is a Florida not-for-profit corporation formed to provide oversight and management over a development known as the Quantum Corporate Park (hereafter, the "Park").

The Park is governed by a series of restrictive covenants.  QPPOA is governed by its bylaws and its Board of Directors.

6.     On or about 22 March 2011, USLIC issued QPPOA nonprofit professional liability policy number NDO1020104J (the policy). A copy of the policy is attached as Exhibit 1.

7.     On or about 26 April 2013, Olen Properties Corporation, Secured Holdings, Inc., Quantum Lakes Villas II Corporation and Villas at Quantum Lakes, Inc. filed an action in Palm Beach County Circuit Court against QPPOA and four of the members of its Board of Directors: Douglas MacDonald, Eugene Gerlica, Fiorenzo Bresolin and Heather Rintoul.  Also sued were hundreds of property owners within the Quantum Corporate Park, too numerous to list here (case number 502013CA007694XXXXMB AH (the Palm Beach action)).

8.     QPPOA gave prompt written notice of the Palm Beach action, which constitutes a claim under Part A, section III.B.2 of the policy, to USLIC.

9.     On 22 May 2013, USLIC acknowledged receipt of the Palm Beach action by letter directed to QPPOA's director, in which USLIC said in relevant part:

> Following review of [the policy] and the allegations asserted against the Insured and it (*sic*) Board Members in the Motion, the Company agrees to provide coverage for this Claim, subject to the Policy terms, conditions and provisions.
>
> Subject to a Reservation of Rights, the Company will appoint the defense of the Insured and its Board Members to the law firm of Milber, Makris, Plousadis & Seiden ["Milber"] [text omitted]. Additionally, no defense costs may be incurred… without the Company's written consent. If defense costs are incurred… we will not be liable for them.

A copy of this letter is attached as Exhibit 2.

10.     QPPOA did not want Milber to defend the Palm Beach action. It told USLIC that it wanted Irwin Gilbert of Gilbert & Yarnell and Stanley Klett of Klett, Mesches & Johnson (collectively "Gilbert") to defend QPPOA and its Directors because Gilbert had more experience with the type of dispute in issue and knew about the parties' long and involved history. Thus,

defense costs would be reduced because Gilbert would not have to spend time coming up to speed on the parties' extensive background and dealings that precipitated or related to the Palm Beach action. QPPOA thus told USLIC it wanted Gilbert in defense of the Palm Beach action.

11.     USLIC responded by letter dated 28 May 2013 (copy attached as Exhibit 3) that it remained committed to appointing counsel (Milber) to represent QPPOA and its Directors "[f]or the reasons cited in the Company's reservation of rights letter dated May 22, 2013…".  USLIC's 28 May 2013 letter cited that part of the policy section entitled DEFENSE AND SETTLEMENT in support of its position that all of Gilbert's fees and costs incurred by QPPOA in defense of the Palm Beach action were QPPOA's obligation because its retention of Gilbert had been without USLIC's written consent. QPPOA has thus far incurred fees and costs to Gilbert for defense in the Palm Beach action in an amount over $200,000.00.

12.     QPPOA and USLIC continued to correspond with each other about the issue of defense counsel, USLIC complaining by letter that it had no idea of what was occurring in the Palm Beach action because QPPOA had refused to let USLIC appoint counsel to represent it (though USLIC would not engage with or inquire of Gilbert if it had any questions or concerns about QPPOA's defense or the status of the Palm Beach action). Gilbert – for QPPOA and its Directors- responded with a written litigation update and renewed demand for payment of Gilbert's fees and costs.

13.     Gilbert's fees and costs remained unpaid by USLIC. On 22 July 2013, Gilbert sent another letter to USLIC detailing the status of the Palm Beach action. On 30 July 2013, Luks Santaniello Petrillo & Jones sent Gilbert a letter on behalf of USLIC (attached as Exhibit 4) saying that USLIC had the sole right to choose defense counsel for QPPOA and that QPPOA's persistence in refusing USLIC's chosen defense counsel would jeopardize coverage under the policy. According to this letter, QPPOA and its Directors were free to retain Gilbert (as a

supplement to Milber) at its own expense.

14.    In June 2014 a final attempt was made to get USLIC to pay Gilbert's fees and costs (Exhibit 5). USLIC and Luks, its counsel, did not respond to QPPOA's final request for payment of defense fees and costs, prompting this action. To date USLIC has paid none of Gilbert's fees and costs incurred in QPPOA's defense, which have been paid and/or are being paid by QPPOA, in a total amount exceeding $200,000.00.

15.    All conditions precedent to this action have occurred, or been waived or performed. QPPOA has cooperated with USLIC and otherwise complied with its obligations, to the extent possible given the latter's reservation of rights and refusal to deal with QPPOA's retained defense counsel.

**COUNT I**
**Declaratory Judgment**

16.    QPPOA realleges paragraphs 1-15 as if restated here.

17.    Once USLIC undertook QPPOA's defense in the Palm Beach action under reservation of rights, USLIC forfeited to QPPOA and its Directors the right to control that defense, which right includes the selection and payment of defense counsel, Gilbert. QPPOA's control of its defense, however, does not excuse USLIC from paying the former's defense costs pursuant to the policy.

18.    USLIC contends that various policy provisions grant it the exclusive right to appoint and pay QPPOA's defense counsel. Relevant sections of the policy are (bold in original):

COVERAGE PART A. NON PROFIT DIRECTORS AND OFFICERS LIABILITY

I.    INSURING AGREEMENT

A.    The **Company** will pay on behalf of the **Insured Loss** in excess of the RETENTION, not exceeding the Limit of Liability for which this Coverage Part applies, that the **Insured** shall become legally obligated to pay because of **Claims** first made against the **Insured** during the **Policy Period** or during the Extended Reporting Period, if applicable, for

**Wrongful Acts** arising solely out of an **Insured's** duties on behalf of the **Organization**.

B.      The **Company** has the right and duty to defend any **Claim** to which this insurance applies, even if the allegations of the **Claim** are groundless, false, or fraudulent.

## III. DEFINITIONS

D.      "**Defense Costs**" means reasonable and necessary legal fees and expenses incurred by the **Company**, or by any attorney designated by the **Company** to defend the **Insureds**, resulting from the investigation, adjustment, defense and appeal of a **Claim**. **Defense Costs** includes other fees, costs, costs of attachment or similar bonds (without any obligation on the part of the **Company** to apply for or furnish such bonds), but does not include salaries, wages, overhead or benefits expenses of the **Insured**.

## NON PROFIT PROFESSIONAL LIABILITY POLICY COMMON POLICY CONDITIONS

Except for the Common Policy Conditions, the terms and conditions of each Coverage Part shall apply only to that Coverage Part unless otherwise provided. If any provision in these Common Policy Conditions is inconsistent or in conflict with the terms and conditions of such Coverage Part, the terms and conditions of such Coverage Part shall control for the purposes of that Coverage Part. Any defined term referenced in these Common Policy Conditions but defined in a Coverage Part shall, for the purposes of coverage under that Coverage Part have the meaning set forth in that Coverage Part.

## II.      DEFENSE AND SETTLEMENT

A.      The **Insured** shall not demand or agree to arbitration of any **Claim** without the written consent of the **Company**. The **Insured** shall not, except at personal cost, make any offer, any payment, admit any liability, settle any **Claim**, assume any obligation or incur any expense without the **Company's** written consent.

B.      If a **Claim** is made against an **Insured** for **Loss** that is both covered and uncovered by this Policy, the **Company** will pay one hundred present (100%) of **Defense Costs** for the **Claim** until such time that the Limits of Liability of this Policy are exhausted by payment of a covered **Loss** or the **Claim** for the covered **Loss** is resolved by settlement, verdict or summary judgment.

C.      The **Company**, as it deems expedient, has the right to investigate, adjust, defend, appeal and, with the consent of the **Insured**, negotiate the settlement of any **Claim** whether within or above the Retention. If the **Insured** refuses to consent to a settlement recommended by the **Company**, the **Company** is not obligated to pay any **Loss** or defend any **Claim** after the Limit of Liability has been exhausted by payment of **Loss**. The **Company's** obligation to the **Insured** for **Defense Costs** and **Loss** attributable to such Claim(s) shall be limited to:

(a)      The amount of the covered **Loss** in excess of the Retention which the **Company** would have pain in settlement at the time the **Insured** first refused to settle;

(b)      Plus covered **Defense Costs** incurred up to the date the **Insured** first refused to settle;

(c)      Plus seventy five percent (75%) of covered **Loss** and **Defense Costs** in excess of the first settlement amount recommended by the **Company** to which the **Insured** did not consent.

It is understood that payment of (a), (b) and (c) above is the limit of the **Company's** liability under this Policy on any **Claim** in which the **Insured** fails or refuses to consent to the **Company's** settlement recommendation, subject at all times to the Limits of Liability and Retention provisions of the applicable coverage section. The remaining twenty five percent (25%) of **Loss** and **Defense Costs** in excess of the amount referenced in (a) and (b) above shall be the obligation of the **Insured**.

D.      The **Insured** agrees to cooperate with the **Company** on all **Claims**, and provide such assistance and information as the **Company** may reasonably request. Upon the **Company's** request, the **Insured** shall submit to examination and interrogation by a representative of the **Company**, under oath if required, and shall attend hearings, depositions and trials and shall assist in the conduct of suits, including but not limited to effecting settlement, securing and giving evidence, obtaining the attendance of witnesses, giving written statements to the **Company's** representatives and meeting with such representatives for the purpose of investigation and/or defense, all of the above without charge to the **Company**. The **Insured** further agrees not to take any action which may increase the **Insured's** or the **Company's** exposure for **Loss** or **Defense Costs**.

E.      The **Insured** shall execute all papers required and shall do everything that may be necessary to secure and preserve any rights of indemnity, contribution or apportionment which the **Insured** or the **Company** may have, including the execution of such documents as are necessary to enable the **Company** to bring suit in the **Insured's** name, and shall provide all other assistance and cooperation which the **Company** may reasonably require.

19.      A genuine dispute has arisen between the parties as to the obligation to pay QPPOA's (Gilbert's) defense fees and costs in light of (i) USLIC's defense of QPPOA under reservation of rights, (ii) QPPOA's refusal to accept USLIC's designated defense counsel; (iii) QPPOA's retention of its own defense counsel as to which USLIC will not consent, and (iv) the policy's omission of any term or condition vesting exclusive right of selection of defense counsel in the carrier, USLIC. QPPOA is thus in doubt as to its rights, duties and obligations under the policy.

20.      In view of the foregoing and by the terms and provisions of USC § 2201, *et. seq*., this Court has the right and power to declare the rights and liabilities of the parties and to grant

Morris & Morris, P.A.
777 South Flagler Drive, Suite 800- West Tower, West Palm Beach, Florida 33401 Tel. 561.838.9811 Fax 561.828.9351

such other and further relief as necessary.

WHEREFORE, plaintiff, Quantum Park Property Owners' Association, Inc., a/k/a Quantum Park Owners Association, respectfully requests a declaratory judgment that defendant, United States Liability Insurance Company, must reimburse all attorneys' fees and costs incurred in QPPOA's defense in the Palm Beach action attributable to Gilbert's fees and costs; United States Liability Insurance Company must pay all such defense fees and costs going forward, up to the limits specified in the policy, and United States Liability Insurance Company must pay QPPOA's attorneys' fees incurred in this action pursuant to §627.428, Florida Statutes.

Dated 25 June 2014                    Respectfully submitted,


                                      /s Mary Morris
                                      Mary Morris, FBN 55573
                                      Morris & Morris, P.A.
                                      Attorneys for Quantum Park POA
                                      777 South Flagler Drive, Suite 800- West Tower
                                      West Palm Beach, Florida 33401
                                      Telephone Number 561.838.9811
                                      Facsimile Number 561.828.9351
                                      E-mail address momorris@morris-morris.com

                                      Co-counsel

                                      Irwin R. Gilbert, FBN 99473
                                      Gilbert & Yarnell
                                      11000 Prosperity Farms Road, Suite 205
                                      Palm Beach Gardens, Florida 33410
                                      Telephone Number 561.622.1252
                                      Facsimile Number 561.799.1904
                                      Email address igilbert@bizlit.net

# NON PROFIT PROFESSIONAL LIABILITY POLICY

## THIS IS A CLAIMS MADE POLICY. PLEASE READ THIS POLICY CAREFULLY.

**NDO1020104I**
Renewal of Number

# UNITED STATES LIABILITY INSURANCE COMPANY
**WAYNE, PENNSYLVANIA**

040051
**ORIGINAL**

## No. NDO1020104J

**POLICY DECLARATIONS**

**Attention Producer/Insured**
PLEASE EXAMINE THIS DOCUMENT CAREFULLY. IF ANY OF THE TERMS OR CONDITIONS VARY FROM THOSE THAT YOU REQUESTED, NOTIFY HULL & COMPANY IMMEDIATELY IN WRITING

**ITEM I.**  PARENT ORGANIZATION AND PRINCIPAL ADDRESS
**Quantum Park Owners Association**
**2500 Quantum Lakes Drive, Suite 101**
**Boynton Beach, FL 33426**

**ITEM II.**  POLICY PERIOD: (MM/DD/YYYY)
FROM **3/22/2011** TO **3/22/2012**

12:01 AM STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH LIMITS OF LIABILITY ARE INDICATED.

## Coverage Part A. Non Profit Directors and Officers Liability

**ITEM III.**  LIMITS OF LIABILITY:

| | | |
|---|---|---|
| a. Non Profit Directors & Officers | **$1,000,000** | EACH CLAIM |
| b. Non Profit Directors & Officers | **$1,000,000** | IN THE AGGREGATE |
| c. Fiduciary Liability | **Not Covered** | EACH CLAIM |

**ITEM IV.**  RETENTION:  **$0** EACH CLAIM

**ITEM V.**  PREMIUM:  **$1,150**

## Coverage Part B.  Employment Practices Liability

**ITEM III.**  LIMITS OF LIABILITY:

| | |
|---|---|
| a. Employment Practices | EACH CLAIM |
| b. Employment Practices | IN THE AGGREGATE |

**ITEM IV.**  RETENTION:  EACH CLAIM

**ITEM V.**  PREMIUM:  **Not Covered**

| | |
|---|---|
| Policy Premium | $1,150.00 |
| FL CAT Fund Assess | $14.95 |
| FIGA Surcharge | $5.75 |
| | $1,170.70 |

**NOTICE:  DEFENSE COSTS SHALL BE APPLIED AGAINST THE RETENTION.**

**ITEM VI.**  Coverage Form(s)/Part(s) and Endorsement(s) made a part of this policy at time of issue:
DO-100 (04-07) Coverage Part A            USL-DOJ (04-07) Policy Jacket
DO-FL (04-07) Florida State Amendatory Endorsement

Agent:  **HULL & COMPANY, INC. (FT. LAUDERDALE, FL) [228]**
PO Box 21567, 33335
Date Issued:  **3/2/2011**
By  _Thomas P. Nerney_
Authorized Representative

**USL-DOD (11/97)**

**EXHIBIT**

**1**



UNITED STATES LIABILITY INSURANCE GROUP

USLI.COM
888-523-5545

# FREE and Substantially Discounted Background Check Services Provided to all Non Profit policyholders

As a United States Liability Policyholder, your first background check is FREE and subsequent checks substantially discounted by 80% for a charge of $9.95.

Through our alliance with IntelliCorp Records this service can be accessed by going to:

www.intellicorp.net/branding/usli

OUR COMPREHENSIVE BACKGROUND CHECK INCLUDES:

► Sex Offender Registry of 50 States
► Criminal Super Search
► One Single-County Criminal Search
► Social Security Number Verification
► Address History Check
► Terrorist Search

RISK MANAGEMENT BENEFITS:

► Access to the most comprehensive, accurate reliable background check database available
► Avoid costly hiring and recruiting mistakes
► Properly screen volunteers working for your non profit organization
► A consistent background screening policy will position an organization to exercise due diligence, which ultimately will help it avoid the consequences of being out of compliance

We are excited to provide this added value service to our Non Profit policyholders.



COVERAGE PART A.  NON PROFIT DIRECTORS AND OFFICERS LIABILITY

NOTICE:  This is a Claims Made Policy.  This Policy only covers those **Claims** first made against the **Insured** during the **Policy Period** or Extended Reporting Period, if purchased.  **Defense Costs** shall be applied against the RETENTION.

In consideration of the payment of the premium and reliance upon all statements made and information furnished to the **Company,** including the statements made in the **Application** and all attachments and materials submitted therewith, and subject to all the provisions of this Policy, the **Company** agrees as follows:

I.  INSURING AGREEMENT
A.  The **Company** will pay on behalf of the **Insured Loss** in excess of the RETENTION, not exceeding the Limit of Liability for which this Coverage Part applies, that the **Insured** shall become legally obligated to pay because of **Claims** first made against the **Insured** during the **Policy Period** or during the Extended Reporting Period, if applicable, for **Wrongful Acts** arising solely out of an **Insured's** duties on behalf of the **Organization**.

B.  The **Company** has the right and duty to defend any **Claim** to which this insurance applies, even if the allegations of the **Claim** are groundless, false, or fraudulent.

II.  FULL PRIOR ACTS COVERAGE PROVISION
Coverage shall apply to any **Claim** made against the **Insured** for **Wrongful Acts** arising solely out of the **Insured's** duties on behalf of the **Organization** committed prior to the expiration date of this Policy, or the effective date of cancellation or non-renewal of this Policy, provided that the **Claim** is first made during the **Policy Period,** or the Extended Reporting Period if applicable, and written notice of said **Claim** is reported to the **Company** as soon as practicable.  There shall be no coverage for any **Claim** reported to the **Company** later than sixty (60) days after the end of the **Policy Period** or after the expiration of the Extended Reporting Period, if applicable.

However, coverage shall not apply to any **Claim** based upon or arising out of any **Wrongful Act** or circumstance likely to give rise to a **Claim** of which the person or persons signing the **Application** had knowledge, or otherwise had a reasonable basis to anticipate might result in a **Claim,** prior to the earlier of:

A.  The inception date of this Policy; or

B.  The inception date of the first Policy of this type the **Company** has issued to the **Parent Organization,** provided that the **Company** has written continuous coverage for the **Parent Organization** from such date to the inception date of this Policy.

III. DEFINITIONS

A. **"Application"** means:

(1) An application and any material submitted for this Policy and

(2) An application(s), including any material submitted, for all previous Policies issued by the **Company** providing continuous coverage until the inception date of this Policy.

The content of (1) and (2) above is incorporated by reference in this Policy as if physically attached hereto.

B. **"Claim"** means:

(1) Any written demand seeking money damages; or

(2) Any proceeding initiated against the **Insured**, including any appeal there from, before any governmental body legally authorized to render an enforceable judgment or order for money damages or other relief against such **Insured** alleging that the **Insured** has committed, or is responsible for, a **Wrongful Act.**

A **Claim** shall be considered first made when the **Insured** or its legal representative or agent first receives notice of the **Claim.**

C. **"Company"** means the insurer identified in the Policy Declarations.

D. **"Defense Costs"** means reasonable and necessary legal fees and expenses incurred by the **Company**, or by any attorney designated by the **Company** to defend the **Insureds**, resulting from the investigation, adjustment, defense and appeal of a **Claim.** **Defense Costs** includes other fees, costs, costs of attachment or similar bonds (without any obligation on the part of the **Company** to apply for or furnish such bonds), but does not include salaries, wages, overhead or benefits expenses of the **Insured.**

E. **"Domestic Partner"** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law.

F. **"Employee"** means any natural person whose labor or service is engaged by and directed by the **Organization** while performing duties related to the conduct of the **Organization's** business and includes leased, part-time, seasonal and temporary workers, independent contractors, volunteers and interns. An **Employee's** status as an **Insured** will be determined as of the date of the **Wrongful Act** that results in a **Claim.**

G. **"Individual Insureds"** means any persons who were, now are, or shall be directors, trustees, officers, **Employees,** or committee members of the **Organization**, including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy.

H. **"Insured(s)"** means the **Organization** and the **Individual Insureds.**

I. **"Loss"** means damages, settlements, pre-judgment and post judgment interest awarded by a court and punitive or exemplary damages to the extent such damages are

**DO-100 (04-07)**                                                       **Page 2 of 9**

insurable under applicable law, but does not include fines, penalties, taxes, the multiplied portion of any multiple damage award, and other monetary sanctions that are uninsurable by operation of law.

For the purpose of determining the insurability of punitive damages and exemplary damages, the laws of the jurisdiction most favorable to the insurability of such damages shall control, provided that such jurisdiction has a substantial relationship to the relevant **Insured** or to the **Claim** giving rise to the damages.

J. **"Organization"** means:
(1) The **Parent Organization**;
(2) Any **Subsidiary** of the **Parent Organization**; or
(3) Any entity in its capacity as a debtor in possession of (1) or (2) above under the United States bankruptcy law or equivalent status under the law of any other jurisdiction.

K. **"Outside Entity"** means any not-for-profit organization that qualifies as such under Section 501(c) of the Internal Revenue Code of 1986 (as amended).

L. **"Parent Organization"** means the entity named in ITEM 1. of the Policy Declarations.

M. **"Personal Injury Act"** means any actual or alleged malicious prosecution, invasion of privacy, wrongful entry or eviction, libel, slander or defamation.

N. **"Policy Period"** means the period from the effective date of this Policy set forth in ITEM II. of the Policy Declarations, to the expiration date or the effective date of cancellation or non-renewal date, if any.

O. **"Subsidiary"** means any nonprofit entity which is more than 50% owned or controlled by the **Parent Organization** as of the effective date of this Policy and is disclosed as a subsidiary in an **Application** to the **Company**.

A non profit entity formed or acquired after the effective date of this Policy is a **Subsidiary** if:
(1) its assets total less than 25% of the total consolidated assets of the **Parent Organization** at the time of formation or acquisition; and
(2) the formation or acquisition with full particulars about the new **Subsidiary** has been disclosed to the **Company** by the **Parent Organization** as soon as practicable but no later than the expiration date of the Policy, or effective date of cancellation or non-renewal of this Policy.

Any non profit entity formed or acquired after the effective date of this Policy whose assets total more than 25% of the total consolidated assets of the **Parent Organization** or any for profit entity formed or acquired after the effective date of this Policy is a **Subsidiary** only if:

**DO-100 (04-07)**                                                    Page 3 of 9

(1) the **Parent Organization** provides written notice to the **Company** of such **Subsidiary** as soon as practicable, but not later than sixty (60) days of the formation or acquisition of the **Subsidiary**; and

(2) the **Parent Organization** provides the **Company** with such information as the **Company** may deem necessary to determine insurability of the **Subsidiary**; and

(3) the **Parent Organization** accepts any special terms, conditions, exclusions, limitations or premium imposed by the **Company**; and

(4) the **Company**, at its sole discretion, agrees to insure the **Subsidiary**.

A **Subsidiary** which is sold or dissolved:

(1) after the effective date of this Policy and which was an **Insured** under this Policy; or

(2) prior to the effective date of this Policy and which was an **Insured** under a prior Policy issued by the **Company**;

shall continue to be an **Insured**, but only with respect to **Claims** first made during this **Policy Period** or Extended Reporting Period, if applicable, arising out of **Wrongful Acts** committed or allegedly committed during the time the entity was a **Subsidiary** of the **Parent Organization.**

P. **"Wrongful Act"** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duties, or **Personal Injury Act** committed or allegedly committed;

(1) by the **Organization**; or

(2) by the **Individual Insureds** arising solely from duties conducted on behalf of the **Organization** or asserted against an **Individual Insured** because of (1) above.

It is further agreed that the same **Wrongful Act**, an interrelated series of **Wrongful Acts** or a series of similar or related **Wrongful Acts** by one or more **Insureds** shall be deemed to be one **Wrongful Act** and to have commenced at the time of the earliest **Wrongful Act.**

IV. EXCLUSIONS

The **Company** shall not be liable to make payment for **Loss** or **Defense Costs** in connection with any **Claim** made against the **Insured** arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

A. Any actual or alleged bodily injury, sickness, humiliation, mental anguish, emotional distress, assault, battery, disease or death of any person, or damage to or destruction of any tangible property including any resulting loss of use. This exclusion shall not apply to **Claim** for humiliation, mental anguish or emotional distress resulting from any **Claim** from a **Personal Injury Act**;

B. Any dishonest, fraudulent or criminal **Wrongful Act** by the **Insured**, however, this exclusion shall not apply unless and until a final adjudication or judgment is rendered against the **Insured** as to this conduct;

C. Any of the **Insureds** gaining any profit, remuneration or advantage to which the **Insured** was not legally entitled provided, however, this exclusion shall not apply unless and until a final adjudication or judgment is rendered against the **Insured** as to this conduct;

D. The actual, alleged or threatened discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, noise, waste materials, or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water, whether or not such actual, alleged or threatened discharge, dispersal, release or escape is sudden, accidental or gradual in nature, or any cost or expense arising out of any request, demand, or order that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any pollutants;

E. Any radioactive, toxic or explosive properties of nuclear material which includes, but is not limited to, source material, "special nuclear material", and "by product material" as those terms are defined in the Atomic Energy Act of 1954 and any amendments thereto and any similar provisions by any federal, state or local statutory or common law;

F. Any pension, profit sharing, welfare benefit or other employee benefit program established in whole or in part for the benefit of any **Individual Insured**, or based upon, arising out of or in any way involving the Employee Retirement Income Security Act of 1974 (or any amendments thereof or regulations promulgated there under) or similar provisions of any federal, state or local statutory law or common law;

G. Any **Claim** by, at the behest of, or on behalf of the **Organization** and/or any **Individual Insured**; provided that this Exclusion shall not apply to:
(1) any derivative action on behalf of, or in the name or right of the **Organization**, if such action is brought and maintained totally independent of, and without the solicitation, assistance, participation or intervention of, any of the **Insureds**; or
(2) a **Claim** that is brought and maintained by or on behalf of any **Individual Insured** for contribution or indemnity which is part of or results directly from a **Claim** which is otherwise covered by the terms of this Policy;

H. Any actual or alleged: refusal to employ; termination of employment; employment related coercion, demotion, evaluation, reassignment, discipline, workplace conditions, false imprisonment, defamation, harassment, humiliation, or discrimination of employment; other employment-related practices, policies, acts or omissions; or sexual harassment by the **Insured** against any person(s) or entity; or negligence involving any of the foregoing;

it being understood that this Exclusion applies whether the **Insured** may be held liable as an employer or in any other capacity and to any obligation to contribute with or indemnify another with respect to such **Claim**;

I.  Any **Claims** made against the **Insured** based upon, arising out of, or in any way involving any actual or alleged discrimination, including but not limited to discrimination based on religion, race, creed, color, sex, age, marital status, sexual preference, pregnancy, handicap or disability;

J.  For actual or alleged liability of the **Insured** under any express contract or agreement; provided, however, this exclusion shall not apply to any **Claim** against an **Individual Insured**;

K.  Any pending or prior litigation, administrative or regulatory proceeding, claim, demand, arbitration, decree, or judgment of which the **Insured** had written notice before the effective date of this Policy; or any fact, circumstance, event, situation, or **Wrongful Act** which before the effective date of this Policy was the subject of any notice to an **Insured** under any other similar policy of insurance to the **Insured**; or any future **Claims** or litigation based upon the pending or prior litigation or derived from the same or essentially the same facts, actual or alleged;

provided that, if this Policy is a renewal of a Policy or Policies previously issued by the **Company** and if the coverage provided by the **Company** was continuous from the effective date of the first such other Policy to the effective date of this Policy, the effective date of this Policy will mean the effective date of the first Policy under which the **Company** first provided continuous coverage to an **Insured**;

L.  The rendering or failure to render medical, psychological or counseling services or referrals;

M.  Any **Claim** against any **Subsidiary** or its **Individual Insureds** for any **Wrongful Act** occurring prior to the date that such entity became a **Subsidiary** or any **Wrongful Act** occurring at any time that such entity is not a **Subsidiary**;

N.  The portion of any **Claim** covered under any other Coverage Part of this Policy;

No **Wrongful Act** of any **Individual Insured** nor any fact pertaining to any **Insured** shall be imputed to any other **Individual Insured** for purposes of determining the applicability of exclusions B. and C.

## V.  LIMITS OF LIABILITY AND RETENTION

Regardless of the number of **Insureds** under this Policy, **Claims** made or brought on account of **Wrongful Acts** or otherwise, the **Company's** liability is limited as follows:

A.  The LIMIT OF LIABILITY specified in the Policy Declarations as IN THE AGGREGATE shall be the maximum liability for **Loss** from all **Claims** to which this Coverage Part applies;

B. The LIMIT OF LIABILITY specified in the Policy Declarations as the Limit for EACH **CLAIM** shall be the maximum liability for **Loss** for each **Claim** to which this Coverage Part applies;

C. **Defense Costs** shall be in addition to the LIMIT OF LIABILITY as shown in the Policy Declarations, except for when Item G. below applies;

D. Subject to the Limits of Liability provisions stated above, the **Company** shall be liable to pay only **Defense Costs** and **Loss** in excess of the RETENTION specified in the Policy Declarations hereof as respects each and every **Claim** to which the Coverage Part applies.

E. The **Company** shall have no obligation to pay any part or all of the RETENTION specified in the Policy Declarations for any **Claim** on behalf of an **Insured**. If the **Company**, at its sole discretion, elects to pay any part or all of the RETENTION, the **Insureds** agree to repay such amounts to the **Company** upon demand;

F. The RETENTION shall not apply to **Loss** paid to or on behalf of an **Individual Insured** when the **Organization** has not indemnified an **Individual Insured** for such **Loss** subject to the terms and conditions of Section VII. INDEMNIFICATION/ WAIVER OF RETENTION;

G. The LIMIT OF LIABILITY for the Extended Reporting Period, if applicable, shall be a part of and not in addition to the LIMIT OF LIABILITY specified in the Declarations;

H. **Claims** based upon or arising out of the same **Wrongful Act**, interrelated **Wrongful Acts**, or a series of similar or related **Wrongful Acts** shall be considered a single **Claim** and shall be considered first made during the **Policy Period** or Extended Reporting Period, if applicable, in which the earliest **Claim** arising out of such **Wrongful Act**(s) was first made and all **Loss** for such **Claims** shall be subject to the one Limit of Liability that applies to such earliest **Claim**;

I. The LIMIT OF LIABILITY for this Coverage Part shall apply separately to each consecutive annual period starting with the beginning of the **Policy Period** shown in the Declarations. If this Policy is issued for a period of more than twelve (12) months but less than twenty four (24) months or if the **Policy Period** is extended after issuance, the Extended Reporting Period will be deemed part of the last preceding annual period for the purposes of determining the LIMIT OF LIABILITY.

## VI. LIFETIME OCCURRENCE REPORTING PROVISION

If the **Parent Organization** shall cancel or non-renew this Policy for a reason other than being sold, acquired or bankrupt, each **Individual Insured** who was not actively serving on behalf of the **Organization** at the time of the cancellation or non-renewal, shall be provided an unlimited extension of time to report any **Claim**(s) first made against the **Individual Insured** after the effective date of such cancellation or non-renewal.

However, this extension of time to report **Claim**(s) shall only be afforded in the event that the **Wrongful Act** was committed before the date of cancellation or non-renewal, and no Directors and Officers Liability policy, or policy providing essentially the same type of coverage, or extended reporting period, is in effect at the time the **Claim** is made.

## VII. INDEMNIFICATION / WAIVER OF RETENTION

Regardless of whether **Loss** and **Defense Costs** resulting from any **Claim** against an **Individual Insured** is actually indemnified by the **Organization**, the RETENTION set forth in the Policy Declarations shall apply to any **Loss** and **Defense Costs** if indemnification of the **Individual Insured** by the **Organization** is legally permissible. The certificate of incorporation, charter, articles of association or other organizational documents of the **Organization**, including by-laws and resolutions, will be deemed to have been adopted or amended to provide indemnification to the **Individual Insured** to the fullest extent permitted by law.

However, if an **Individual Insured** is not indemnified for **Loss and Defense Costs** solely by reason of the **Organization's** financial insolvency or because indemnification is not legally permissible, an **Individual Insured's** RETENTION as stated on the Declarations for Coverage Part A. Non Profit Directors and Officers Liability, shall be amended to $0. This change in Retention shall not affect any other terms or conditions of this Policy.

## VIII. SPOUSAL AND DOMESTIC PARTNER EXTENSION

If a **Claim** against an **Individual Insured** includes a **Claim** against the lawful spouse or **Domestic Partner** of such **Individual Insured** solely by reason of (a) such spousal or **Domestic Partner** status; or (b) such spouse's or **Domestic Partner's** ownership interest in property or assets that are sought as recovery for **Wrongful Acts**; any **Loss** which such spouse or **Domestic Partner** becomes legally obligated to pay on account of such **Claim** shall be deemed **Loss** which the **Individual Insured** becomes legally obligated to pay as a result of the **Claim.**

All definitions, exclusions, terms and conditions of this Policy, including the RETENTION, applicable to any **Claim** against or **Loss** sustained by such **Individual Insured** shall also apply to this coverage extension.

The extension of coverage afforded by this Section VIII. shall not apply to the extent the **Claim** alleges any **Wrongful Act**, error, omission, misstatement, misleading statement or neglect or breach of duties by such spouse or **Domestic Partner.**

## IX. EXTENSION FOR OUTSIDE DIRECTORSHIP ACTIVITIES

Subject to the terms, conditions, exclusions and limitations of this Policy, coverage shall be extended under this Policy for any **Claim** against any director, officer or trustee of the

**Organization** while acting in the capacity of a director, officer or trustee of any **Outside Entity**, and performing duties related to the conduct of the **Outside Entity's** business, but only if such service is at the written request of the **Organization**.  Coverage under this Policy does not extend to any **Outside Entity** or to any other director, officer, trustee, **Employee**, temporary worker, volunteer or intern of such **Outside Entity**.  Any extension of coverage to any director, officer or trustee of the **Organization** as provided in this section shall be considered excess of any other indemnity or insurance available to or the director, officer or trustee under a Policy issued to the **Outside Entity** in question. Any payment for **Loss** under this extension shall reduce the LIMIT OF LIABILITY for this coverage part as set forth in the Declaration Page.

# UNITED STATES LIABILITY INSURANCE GROUP
# WAYNE, PENNSYLVANIA

This Endorsement modifies insurance provided under the following:

## NON PROFIT PROFESSIONAL LIABILITY POLICY

## FLORIDA STATE AMENDATORY ENDORSEMENT

To be attached to and form a part of all Non Profit Professional Liability Policies written in the state of Florida.

It is hereby agreed that:

1.  DOJ, V. CANCELLATION OR NON RENEWAL, paragraph A. is replaced by the following:

    A. This Policy may be canceled by the **Parent Organization** by either surrender thereof to the **Company** at its address stated in the Declarations or by mailing to the **Company** written notice requesting cancellation and in either case stating when thereafter such cancellation shall be effective.  If canceled by the **Parent Organization**, the refund, if any, shall be pro rated.

2.  DOJ, XIII. CHANGES IN EXPOSURE is amended by deletion of the sentence, "The entire premium for this policy shall be deemed earned".

3.  Any reference to "Retentions" in DOJ, DO-100 and DO-101 is replaced with "Deductibles".

All other terms and conditions of this Policy remain unchanged.  This endorsement is a part of your Policy and takes effect on the effective date of your Policy unless another effective date is shown.

# Non Profit

# Professional

# Liability

# Policy

**United States Liability
Insurance Group**

*A Berkshire Hathaway Company*

**190 South Warner Road
Wayne, PA 19087-2191
1-800-523-5545 • www.usli.com**

This policy jacket together with the declarations page,
coverage form and endorsements, if any, complete this policy.

The enclosed declarations designates the issuing company.

USL DOJ (04-07)

## Non Profit Professional Liability Policy
## Common Policy Conditions

Except for the Common Policy Conditions, the terms and conditions of each Coverage Part shall apply only to that Coverage Part unless otherwise provided. If any provision in these Common Policy Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of such Coverage Part shall control for the purposes of that Coverage Part.

Any defined term referenced in these Common Policy Conditions but defined in a Coverage Part shall, for the purposes of coverage under that Coverage Part have the meaning set forth in that Coverage Part.

I.  EXTENDED REPORTING PERIOD
   A.  If the Policy expires, is cancelled or non-renewed for any reason other than non-payment of premium, the **Parent Organization** shall have the right to purchase an Extended Reporting Period to report any **Claim**(s) first made against an **Insured** during the twelve (12) months, or twenty-four (24) months or thirty-six (36) months after the effective date of such expiration, cancellation or non-renewal (depending upon the Extended Reporting Period purchased).  An Extended Reporting Period shall only apply to a **Wrongful Act** or **Wrongful Employment Act** committed before the date of such expiration, cancellation or non-renewal. For the purpose of this clause, any change in premium terms or terms on renewal shall not constitute a refusal to renew.

   B.  The additional premium for the Extended Reporting Period shall be 30% of the annual premium set forth in the Policy Declarations for the twelve (12) month period, 75% of the annual premium set forth in the Policy Declarations for the twenty-four (24) month period, and 120% of the annual premium set forth in the Policy Declarations for the thirty-six (36) month period. The Extended Reporting Period begins on the expiration date or the effective date of cancellation or non-renewal of the Policy. The **Parent Organization** must notify the **Company** in writing and must pay the additional premium due above no later than thirty (30) days after the effective date of such expiration, cancellation or non-renewal.

   C.  All premium paid with respect to an Extended Reporting Period shall be deemed fully earned as of the first day of the Extended Reporting Period.

   D.  The Limits of Liability available during the Extended Reporting Period shall not exceed the balance of the Limits of Liability available on the expiration date or effective date of the cancellation or non-renewal of the Policy.

   E.  Coverage for **Claim**(s) first received and reported during the Extended Reporting Period shall be in excess over any other valid and collectible insurance providing coverage for such **Claims**(s).

II. DEFENSE AND SETTLEMENT
   A.  The **Insured** shall not demand or agree to arbitration of any **Claim** without the written consent of the **Company**. The **Insured** shall not, except at personal cost, make any offer, any payment, admit any liability, settle any **Claim**, assume any obligation or incur any expense without the **Company's** written consent.

   B.  If a **Claim** is made against an **Insured** for **Loss** that is both covered and uncovered by this Policy, the **Company** will pay one hundred percent (100%) of **Defense Costs** for the **Claim** until such time that the Limits of Liability of this Policy are exhausted by payment of a covered **Loss** or the **Claim** for the covered **Loss** is resolved by settlement, verdict or summary judgment.

   C.  The **Company**, as it deems expedient, has the right to investigate, adjust, defend, appeal and, with the consent of the **Insured**, negotiate the settlement of any **Claim** whether within or above the Retention. If the **Insured** refuses to consent to a settlement recommended by the **Company**, the **Company** is not obligated to pay any **Loss** or defend any **Claim** after the Limit of Liability has been exhausted by payment of **Loss**.
   The **Company's** obligation to the **Insured** for **Defense Costs** and **Loss** attributable to such **Claim**(s) shall be limited to:

      (a)  The amount of the covered **Loss** in excess of the Retention which the **Company** would have paid in settlement at the time the **Insured** first refused to settle;
      (b)  Plus covered **Defense Costs** incurred up to the date the **Insured** first refused to settle;
      (c)  Plus seventy five percent (75%) of covered **Loss** and **Defense Costs** in excess of the first settlement amount recommended by the **Company** to which the **Insured** did not consent.

   It is understood that payment of (a), (b) and (c) above is the limit of the **Company's** liability under this Policy on any **Claim** in which the **Insured** fails or refuses to consent to the **Company's**

settlement recommendation, subject at all times to the Limits of Liability and Retention provisions of the applicable coverage section. The remaining twenty five percent (25%) of **Loss** and **Defense Costs** in excess of the amount referenced in (a) and (b) above shall be the obligation of the **Insured**.

D. The **Insured** agrees to cooperate with the **Company** on all **Claims**, and provide such assistance and information as the **Company** may reasonably request.  Upon the **Company's** request, the **Insured** shall submit to examination and interrogation by a representative of the **Company**, under oath if required, and shall attend hearings, depositions and trials and shall assist in the conduct of suits, including but not limited to effecting settlement, securing and giving evidence, obtaining the attendance of witnesses, giving written statements to the **Company's** representatives and meeting with such representatives for the purpose of investigation and/or defense, all of the above without charge to the **Company**.
The **Insured** further agrees not to take any action which may increase the **Insured's** or the **Company's** exposure for **Loss** or **Defense Costs**.

E. The **Insured** shall execute all papers required and shall do everything that may be necessary to secure and preserve any rights of indemnity, contribution or apportionment which the **Insured** or the **Company** may have, including the execution of such documents as are necessary to enable the **Company** to bring suit in the **Insured's** name, and shall provide all other assistance and cooperation which the **Company** may reasonably require.

III. ORDER OF PAYMENTS
In the event payment of **Loss** is due under this Policy but the amount of such **Loss** exceeds the remaining available Limit of Liability specified in the Policy Declarations, the **Company** will:

(a) first pay such **Loss** on behalf of the **Individual Insured(s)** for which coverage is provided under Section I. INSURING AGREEMENT; then

(b) to the extent of any remaining amount of the Limit of Liability available after payment under (a) above, pay such **Loss** on behalf of the **Organization** for which coverage is provided under Section I. INSURING AGREEMENT.

IV. NOTICE/ CLAIM REPORTING PROVISIONS
Notice hereunder shall be given in writing to the **Company**. If mailed, the date of mailing of such notice shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.
USL DOJ (04-07)

A. As a condition precedent to exercising any right to coverage under this Policy, the **Insured** shall give to the **Company** written notice of a **Claim** as soon as practicable, but:

(1) if the Policy expires, is cancelled or is non-renewed and if no Extended Reporting Period is purchased, no later than 60 days after the expiration date or the effective date of such cancellation or non-renewal; or

(2) if an Extended Reporting Period is purchased, no later than the last day of the Extended Reporting Period.

B. If written notice of a **Claim** has been given to the **Company** pursuant to Clause IV. A. above, then any **Claim** which is subsequently made against the **Insured** and reported to the **Company** alleging, arising out of, based upon or attributable to the facts alleged in the **Claim** for which notice was given or alleging any **Wrongful Act** or **Wrongful Employment Act** which is the same as or related to any **Wrongful Act** or **Wrongful Employment Act** alleged in the **Claim** for which notice was given, shall be considered made at the time such notice was given.

C. If during the **Policy Period** the **Insured** shall become aware of any circumstances which could give rise to a **Claim** being made against the **Insured**, the **Insured** shall give written notice to the **Company** of the circumstances and the reasons for anticipating such a **Claim** with full particulars as to dates and persons involved. Such notice must be given to the **Company** within the **Policy Period**. Any **Claim** which is subsequently made against the **Insured** and reported to the **Company** as required by the Policy alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** or **Wrongful Employment Act** which is the same as or related to any **Wrongful Act** or **Wrongful Employment Act** alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was first given to the **Company**.

V. CANCELLATION OR NON-RENEWAL
A. This Policy may be canceled by the **Parent Organization** by either surrender thereof to the **Company** at its address stated in the Policy Declarations or by mailing to the **Company** written notice requesting cancellation and in either case stating when thereafter such cancellation shall be effective. If canceled by the **Parent Organization**, the **Company** shall retain the customary short rate proportion of the premium.

B. The **Company** may cancel this Policy only in the

event of the failure of the **Insured** to pay the premium when due by mailing to the **Parent Organization** written notice when, not less than ten (10) days thereafter, such cancellation shall be effective.

C.  In the event the **Company** refuses to renew this Policy, the **Company** shall mail to the **Parent Organization**, not less than sixty (60) days prior to the end of the **Policy Period**, written notice of non-renewal. Such notice shall be binding on all **Insureds**.

D.  The mailing of notice of cancellation or non-renewal shall be sufficient notice and the effective date of cancellation or non-renewal stated in any such notice shall become the end of the **Policy Period**. Delivery of such written notice by the **Parent Organization** or the **Company** shall be equivalent to the mailing.

E.  If the Policy is canceled by the **Company**, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected, or as soon as practicable thereafter.

## VI.  REPRESENTATIONS AND SEVERABILITY

A.  The **Insureds** represent that the particulars and statements contained in the **Application** are true and agree that (1) those particulars and statements are the basis of this Policy and are to be considered as incorporated into and constituting a part of the Policy; (2) those particulars and statements are material to the acceptance of the risk assumed by the **Company**; and (3) the Policy is issued in reliance upon the truth of such representations.

B.  Except for material facts or circumstances known to the person or persons signing the **Application**, no statement in the **Application** or knowledge or information possessed by an **Insured** shall be imputed to any other **Insured** for the purpose of determining the availability of coverage.

## VII.  SUBROGATION

In the event of any payment under this Policy, the **Company** shall be subrogated to the **Insured's** right of recovery therefore against any person or entity and the **Insured** shall execute and deliver such instruments and papers and do whatever else is necessary to secure such rights. The **Insured** shall do nothing to prejudice such rights.

## VIII.  CHANGES

Notice to any agent or knowledge by any agent shall not affect a waiver or change in any part of this Policy or stop the **Company** from asserting any right under the terms of this Policy, nor shall the terms of this Policy be waived or

USL DOJ (04-07)

changed except by an endorsement, issued by the **Company** to form a part of this Policy.

## IX.  AUTHORIZATION CLAUSE AND NOTICES

By acceptance of this Policy, the **Insured** agrees that the **Parent Organization** shall act on behalf of all **Insureds** with respect to the giving and receiving of any return premiums that may become due under the Policy. Notice to the **Parent Organization** shall be directed to the individual named in the **Application**, or such other person as shall be designated by the **Parent Organization** in writing, at the address of the **Parent Organization**. Such notice shall be deemed to be notice to all **Insureds**. The **Parent Organization** shall be the agent of all **Insureds** to effect changes in the Policy or purchase Extended Reporting Period.

## X.  ASSIGNMENT

Assignment of interest under this Policy shall not bind the **Company** unless its consent is endorsed hereon.

## XI.  OTHER INSURANCE

This Policy shall be excess of and not contribute with other existing insurance, including but not limited to any insurance under which there is a duty to defend, unless such other insurance is specifically written to be in excess of this Policy.

## XII.  TERMS OF POLICY CONFORMED TO STATUTE

Terms of this Policy which are in conflict with the statutes of the State wherein this Policy is issued are hereby amended to conform to such statutes.

## XIII.  CHANGES IN EXPOSURE

If after the Inception Date of this Policy:

(1)  the **Parent Organization** merges into or consolidates with another entity such that the **Parent Organization** is not the surviving entity; or

(2)  another entity, person or group of entities and/or persons acting in concert acquires more than fifty percent (50%) of the assets of the **Parent Organization**; or

(3)  another entity, person or group of entities and/or persons acting in concert acquires the right to elect or select a majority of the directors of the **Parent Organization**; or

(4)  the **Parent Organization** sells all or substantially all of its assets,

with such events being referred to as a "Transaction,"

this Policy shall continue in full force and effect until the expiration date of the policy, or the effective date of cancellation or non-renewal if applicable with respect to **Wrongful Acts** or **Wrongful Employment Acts** occurring before the Transaction, but there shall be no coverage under this Policy for actual or alleged **Wrongful Acts** or **Wrongful Employment Acts** occurring on and after the Transaction.

The **Parent Organization** shall give the **Company** written notice of the Transaction as soon as practicable, but not later than thirty (30) days after the effective date of the Transaction. The entire premium for this Policy shall be deemed earned regardless of any Transaction(s) during the **Policy Period**. In the event of a Transaction, the **Parent Organization** shall have the right to an offer of coverage by the **Company** for an Extended Reporting Period to report **Wrongful Acts** or **Wrongful Employment Acts** occurring prior to the effective date of the Transaction.

## XIV. ACTION AGAINST THE COMPANY

A.   No action shall lie against the **Company** unless as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, and until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant or the claimant's legal representative, and the **Company**.

B.   Any person or the legal representatives thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. No person or entity shall have any right under this Policy to join the **Company** as a party to any action against the **Insured** to determine the **Insured's** liability, nor shall the **Company** be impleaded by the **Insured** or their legal representatives. Bankruptcy or insolvency of the **Insured** or their successors in interest shall not relieve the **Company** of its obligations hereunder.

## XV. ACCEPTANCE

This Policy embodies all agreements existing between the parties hereunder or any of their agents relating to this insurance.

**In Witness Whereof**, the company has caused this Policy to be executed and attested, but this Policy shall not be valid unless countersigned by a duly authorized representative of the company.

Secretary

President

## Charles W. Edgar

| | |
|---|---|
| **From:** | Desha Pencheff <desha@qgc.cc> |
| **Sent:** | Wednesday, May 15, 2013 10:47 AM |
| **To:** | Charles W. Edgar |
| **Subject:** | QPOA Insurance -- Main Policy |
| **Attachments:** | QPOA Insurance Policy MAIN POLICY 2012-2013.pdf |

Hi Chuck,

Here's a copy of the whole policy – This is last year's but remains the same.  (I have to get the current one from our broker – but you can use the attached for now.)

I forget to ask yesterday, are you feeling better?  I hope so.  There sure is a lot of it going around.  Take care of yourself.

D

Desha M. Pencheff
Director of Accounting Services
Quantum Group of Companies
2500 Quantum Lakes Drive
Suite 101
Boynton Beach, FL 33426
561-740-2447  Ext. 26
561-423-7673 eFax Direct to me
561-740-2429 Corporate Fax
Email: desha@qgc.cc

NDO013J1324

**Quote is valid until 3/22/2013**

To:  **Quantum Park Owners Association**
Renewal of: NDO1020104K - Expiration Date: 3/22/2013

| | |
|---|---|
| Please bind effective: _____ | |
| Select the policy term: | |
| ☐ Three Year Policy - Annual premium will not increase | |
|     - No renewal application for three years | |
|     - Aggregate limits reinstated annually | |
|     Above subject to endorsement  DO-3YR-FL | |
| ☐ One Year Policy | |

Signature: _____

## I. PREMIUM AND UNDERWRITING NOTES/REQUIREMENTS

### NON PROFIT DIRECTORS & OFFICERS LIABILITY POLICY INFORMATION

| | |
|---|---|
| Carrier: | United States Liability Insurance Company |
| Status: | Admitted |
| A.M. Best Rating: | A++ (Superior) - IX |

**Coverage Part A: Non Profit Directors & Officers Liability Limit Options**

| LIMIT OPTIONS | PREMIUM | ADDITIONAL COSTS | AMOUNT DUE |
|---|---|---|---|
| ☐ $1,000,000 | $800 | $10.40 | $810.40 |

**Coverage Part B: Employment Practices Liability Limit Options**

| LIMIT OPTIONS | PREMIUM | ADDITIONAL COSTS | AMOUNT DUE |
|---|---|---|---|
| ☐ Not Offered | | | |

### ADDITIONAL QUOTE INFORMATION

Part A Retention: $0 Each Claim

Directors and Officers Coverage is provided on a Claims Made basis.

This quote represents annual premiums.  When the Three Year policy term is selected, the above will be payable annually per bill plan selected.

Please Note:  All applicable taxes and fees for the Three Year premium will be invoiced in their entirety at the inception of the policy.

### ADDITIONAL COSTS INCLUDE:

| | |
|---|---|
| Florida FL CAT Fund Assess | 1.30% |

*Please note that we will not be able to bind coverage until we satisfy all Prior to Binding requirements.*

**Prior to binding, this account is subject to the following:**

- A completed Confirmation of Material Information Form (attached) signed and dated by the president or chariman.
- These terms are valid as long as all of the questions are answered `NO`. If any questions are answered `YES`,
- please submit the form along with details to the home office for review and revised renewal terms.

Please contact us with any questions regarding the terminology used or the coverages provided.

**Read the quote carefully, it may not match the coverages requested**

NDO013J1324.

<u>Underwriting Notes:</u>

- Call Us! We want to work with you to retain your business!

## II. REQUIRED FORMS & ENDORSEMENTS
### Directors and Officers Endorsements

| DO Jacket | (09/10) Non Profit Professional Liability Policy | DO-FL | (04/07) Florida State Amendatory Endorsement |
|---|---|---|---|
| DO-100 | (04/07) Coverage Part A.  Non Profit Directors and Officers Liability | USL-DO J | (04/07) Professional Liability Policy Common Policy Conditions |
| *DO-283 | **(05/11) Data & Security Endorsement** | | |

### If Purchased

| DO-3YR DEC | (02/12) Amendment To Policy Declarations-Three-Year Policy Term | DO-3YR-FL | (05/07) Three Year Policy Term Endorsement |
|---|---|---|---|

For your convenience we have marked the endorsements that have changed for this coming term. Those marked with 1 asterisk (*) are new forms not previously included on this account.

Please contact us with any questions regarding the terminology used or the coverages provided.

**Read the quote carefully, it may not match the coverages requested**

# UNITED STATES LIABILITY INSURANCE GROUP
# WAYNE, PENNSYLVANIA

> This endorsement modifies insurance provided under the following:
>
> ## NON PROFIT DIRECTORS AND OFFICERS LIABILITY

# DATA & SECURITY+ ENDORSEMENT

Unless otherwise stated herein, the terms, conditions, exclusions and other limitations set forth in this endorsement are solely applicable to coverage afforded by this endorsement. This endorsement is part of and subject to the provisions of the Policy to which it is attached.

I. SCHEDULE OF ADDITIONAL COVERAGES AND LIMITS

The following is a summary of Coverages and Limits of Liability provided by this endorsement.

| COVERAGE | LIMIT OF LIABILITY |
|---|---|
| A. Data Breach Expense | $50,000 each claim<br>$50,000 in the aggregate |
| B. Identity Theft Expense | $50,000 each claim<br>$50,000 in the aggregate |
| C. Workplace Violence Expense | $50,000 each claim<br>$50,000 in the aggregate |
| D. Kidnap Expense | $50,000 each claim<br>$50,000 in the aggregate |

In no event shall the **Company** pay more than $200,000 in any **Policy Period** for any and all covered incidents. No retention applies to any claim or in the aggregate.

II. COVERAGES:

Words shown in **bold** shall have the meaning provided in III. DEFINITIONS of this endorsement or as provided in COVERAGE PART A. NON PROFIT DIRECTORS AND OFFICERS LIABILITY, III. DEFINITIONS, as applicable.

A. Data Breach Expense

The **Company** will reimburse the **Organization** up to the **Data Breach** Expense Limit of Liability stated in the schedule above, for the following reasonable costs paid by the **Organization** as a result of a **Data Breach** discovered during the **Policy Period** and reported to the **Company** during the **Policy Period** but in no event later than sixty (60) days after discovery of such **Data Breach**:

1. Development of a plan to assist the **Organization** in responding to a **Data Breach**;
2. Data analysis or forensic investigation to assess the scope of a **Data Breach**;

DO 283 (05-11)                                                                 Page 1 of 5

3. The development, printing and mailing of legally required notification letters to those affected by a **Data Breach;**

4. Development of a website link for use by the **Organization** in communicating about a **Data Breach;**

5. Development of a customer relationship management system for use by the **Organization** in communicating with persons affected by a **Data Breach;**

6. Public relations services or crisis management services retained by the **Organization** to mitigate the adverse affect on the **Organization's** reputation with customers, investors and employees resulting from a **Data Breach** that becomes public.

The **Organization** must first report the **Data Breach** to the **Company** and use a service provider of the **Company's** choice prior to incurring any of the above costs. The **Data Breach** must occur during the **Policy Period**.

B. Identity Theft Expense

The **Company** will reimburse a Director or Officer of the **Organization** up to the **Identity Theft** Expense Limit of Liability stated in the schedule above, for the following expenses, services or fees paid by such Director or Officer after he or she has become a victim of **Identity Theft** discovered during the **Policy Period** and reported to the **Company** during the **Policy Period** but in no event later than sixty (60) days after discovery of the **Identity Theft**:

1. Credit monitoring services provided by a vendor of the **Company's** choice for the affected Director or Officer for up to one year following an **Identity Theft**;

2. Additional application fees paid by a Director or Officer whose loan(s) were rejected based on incorrect credit information resulting from an **Identity Theft**;

3. Notary fees, certified and overnight mail expenses paid by a Director or Officer in connection with reporting an **Identity Theft** to financial institutions, credit bureaus and agencies and law enforcement authorities.

Any Director or Officer of the **Organization** who is a victim of **Identity Theft** must first report the **Identity Theft** to the **Company** and use a service provider of the **Company's** choice prior to incurring any of the above expenses, services or fees. The **Identity Theft** must occur during the **Policy Period**. In no event shall the **Company's** total **Policy Period** payment under this coverage be more than the per claim or aggregate limit shown on the Policy Declarations

C. Workplace Violence Expense

The **Company** will reimburse the **Organization,** up to the Workplace Violence Expense Limit of Liability stated in the schedule above, for the following reasonable costs paid by the **Organization** for a period of thirty (30) days following, and as a result of, a **Workplace Violence Act**:

1. Counseling services rendered to **Employees** and persons on the **Organization's Premises** directly affected by a **Workplace Violence Act**. The counseling services must be rendered by a licensed, professional counselor of the **Organization's** choice.

2. Services rendered by an independent public relations consultant of the **Organization's** choice for the purpose of mitigating the adverse affect of a **Workplace Violence Act** on the **Organization**.

To be covered, the **Workplace Violence Act** must occur during the **Policy Period** and be reported to the **Company** during the **Policy Period** but in no event later than sixty (60) days after the occurrence.

D. Kidnap Expense

The **Company** will pay of behalf of the **Organization,** up to the Kidnap Expense Limit of Liability stated in the schedule above**,** for the following reasonable costs paid by the **Organization** as a result of a **Kidnapping** occurring during the **Policy Period** and reported to the **Company** during the **Policy Period** but in no event later than sixty (60) days after the occurrence.

1. Retaining an independent negotiator or consultant to facilitate the release of a **Kidnapping** victim. Nothing herein shall obligate the **Company** to recommend, select, retain or arrange for the retention of such independent negotiator or consultant;

2. Interest on a loan obtained by the **Organization** to pay expenses covered under this endorsement that are incurred as a result of a **Kidnapping.** However, there is no coverage for interest accruing prior to thirty (30) days preceding the date of such payment or subsequent to the date the **Company** pays any portion of a Kidnap Expense or for expenses not covered under this endorsement;

3. Travel and accommodations incurred by the **Organization** in direct response to the **Kidnapping.** Nothing herein shall obligate the **Company** to recommend, select, or arrange for such travel and accommodations;

4. A reward up to $10,000 paid by the **Organization** to an informant for information which leads to the arrest and conviction of the person(s) responsible for the **Kidnapping;**

5. The current base salary paid to a Director or Officer of the **Organization** for the Director or Officer's work on behalf of the **Organization**, who is a victim of a **Kidnapping** subject to the following:

   (a) salary reimbursement shall commence on the thirty-first (31st) consecutive day after a **Kidnapping;**

   (b) salary reimbursement shall end when the Director or Officer is released; or is confirmed dead; or one hundred and twenty (120) days after the Director or Officer is last confirmed to be alive; or twelve (12) months after the date of the **Kidnapping**, or when the Kidnap Expense Limit of Liability has been exhausted by payments made by the **Company**, whichever occurs first.

There is no coverage for Kidnap Expense resulting from a **Kidnapping** planned, carried out or participated in, directly or indirectly, by any person who is or was a member of the victim's family or the **Organization**.

## III. DEFINITIONS

"**Data Breach**" means the disclosure by the **Organization** by electronic or non-electronic means of an individual(s) non-public personal or financial information in the **Organization's** care, custody and control without the authorization or permission of the owner of such information.

"**Identity Theft**" means (a) obtaining information that would assist in accessing financial resources, obtaining identification documents, or obtaining benefits of a Director or Officer;

(b) obtaining goods or services through the use of identifying information of a Director or Officer; or (c) obtaining identification documents in the name of a Director or Officer without his/her authorization, consent, or permission for the purpose of committing, aiding or abetting any activity in violation of federal, state or local law. **Identity Theft** does not mean any of the above committed directly or indirectly by another Director, Officer or a family member of a Director or Officer.

"**Kidnapping**" means an actual or alleged wrongful abduction and involuntary restraint of a Director or Officer of the **Organization**, by one or more persons acting individually or collectively in which monetary or non-monetary demands are made to the **Organization** to obtain the Directors or Officers release.

"**Premises**" means buildings, facilities or properties leased or owned by the **Organization** in conducting its operations.

"**Workplace Violence Act**" means:

1. an actual use of unlawful deadly force, or

2. the threatened use of unlawful deadly force involving the display of a lethal weapon,

occurring on the **Organization's Premises** and directed at an **Individual Insured,** or other persons on the **Premises** of the **Organization**.

Where applicable, other terms used in this endorsement shall have the same meaning as defined in COVERAGE PART A. NON PROFIT DIRECTORS AND OFFICERS LIABILITY.


IV. LIMITS OF LIABILITY AND RETENTION

The Limit of Liability specified above as in the aggregate shall be the maximum liability for all expenses to which the coverage applies.

The Limit of Liability specified above as the Limit for each claim shall be the maximum liability for expenses for each claim to which the coverage applies.

The maximum Limit of Liability for any expenses provided by this endorsement shall be in addition to the LIMIT OF LIABILITY specified in the Declarations IN THE AGGREGATE for COVERAGE PART A. NON PROFIT DIRECTORS AND OFFICERS LIABILITY.

The RETENTION shown on the Policy Declarations shall not apply to the expense coverage provided by this endorsement.

Regardless of the amount of covered expenses incurred by the **Organization** under this endorsement, the maximum Limit of Liability for any one **Data Breach**, **Identity Theft**, **Kidnapping** or **Workplace Violence Act** shall be $50,000 each claim and in the aggregate. Any one incident, interrelated incidents or series of similar or related incidents for which coverage is provided under this endorsement shall be treated as one incident subject to the maximum Limit of Liability available under this endorsement at the time the incident(s) is first reported to the Company regardless of whether the incident(s) continues and expenses are incurred by the Organization in any subsequent Policy Period(s).

V. ADDITIONAL EXCLUSIONS

The insurance provided by this endorsement does not apply to:

1. Expense reimbursement resulting in any **Insured** gaining any profit, remuneration or advantage to which the **Insured** is not legally entitled.

2. Expense(s) arising from any incident(s) of which any **Insured** had notice before the inception date of this Policy; or any fact, circumstance, event, situation or incident which before the inception date of this Policy was the subject of any notice under any other similar policy of insurance or any future claims for expenses under this Policy based upon such pending or prior notice.

3. Expenses incurred by any **Subsidiary** of an **Organization** occurring prior to the date that such entity became a **Subsidiary** or incurred at any time that such entity is not a **Subsidiary**.

4. The portion of any expense(s) covered under this endorsement that is also covered under any other coverage part of this Policy.

VI. COVERAGE LIMITATIONS

The following terms, conditions and exclusions in COVERAGE PART A. NON PROFIT DIRECTORS AND OFFICERS LIABILITY, do not apply to this endorsement:

1. Common Policy Conditions; I. EXTENDED REPORTING PERIOD.

2. II. FULL PRIOR ACTS COVERAGE PROVISION.

3. IV. EXCLUSION A

4. VI. LIFETIME OCCURRENCE REPORTING PROVISION

5. VIII. SPOUSAL AND DOMESTIC PARTNER EXTENSION.

6. IX. EXTENSION FOR OUTSIDE DIRECTORSHIP ACTIVITIES.

Otherwise, the terms and conditions of COVERAGE PART A. NON PROFIT DIRECTORS AND OFFICERS LIABILITY, shall apply where applicable to give effect to this endorsement.

Coverage provided by your Policy and any endorsements attached thereto are amended by this endorsement where applicable. All other terms and conditions of this Policy remain unchanged. This endorsement is a part of the **Parent Organization's** Policy and takes effect on the effective date of the **Parent Organization's** Policy unless another effective date is shown.

AS A DIRECTOR OR OFFICER OF A NONPROFIT ORGANIZATION, ARE YOU IMMUNE FROM LIABILITY?

Immunity does not prevent an organization from being sued
Immunity typically applies to volunteers, not to paid employees or the organization itself
Employment-related laws are the same for any type of organization
Over 90 percent of the claims against nonprofit organizations are employment practices-related
These employment practices claims may include wrongful termination, third party sexual harassment and third party discrimination
Nearly 85 percent of nonprofits have an annual budget that is less than the average cost to defend a claim closed by litigation

Why should you purchase the USLI Nonprofit Directors and Officers and Employment Practices Liability policy?
The following are important coverages to have in your policy. Make sure you have all of these features:

| | | |
|---|---|---|
| Data & Security+ Endorsement - $50,000 sub-limit each for data breach, identity theft, workplace violence and kidnap expenses plus free identity theft services for directors and officers who become victims of identity theft (available in most jurisdictions) | ✓ | ? |
| Separate limits of liability for directors and officers and employment practices liability claims (directors and officers limit not eroded by employment claims) | ✓ | ? |
| Defense outside the limit of liability on all claims | ✓ | ? |
| Punitive damages where insurable by law (most favorable venue wording) are included automatically but not available in Alabama or West Virginia. | ✓ | ? |
| Third party harassment and third party discrimination coverage | ✓ | ? |
| Lifetime occurrence reporting provision (occurrence feature for former directors and officers) | ✓ | ? |
| Coverage for both monetary and non-monetary claims | | ? |
| Coverage for outside directorship liability | ✓ | ? |
| Risk management services - Free unlimited employment practices consultation via a toll free helpline supported by the ability to ask questions online in the new employment practices liability risk management toolkit from PeopleSystems. The toolkit also contains a helpful news center, how-to guide for writing an employment manual and sample HR policies and employment forms | ✓ | ? |
| Fair Labor Standards Act (FLSA) $100,000 sub-limit for defense costs and loss (available in most jurisdictions) | ✓ | ? |
| Excess Benefit Transaction Excise Tax Coverage - $20,000 sub-limit (available in most jurisdictions) | ✓ | ? |
| Free and substantially discounted background check services | | ? |
| Standard form option (available in most jurisdictions): Combined directors and officers and employment practices liability limit, defense inside the limit, no employment practices liability risk management services and excluded coverage for Data & Security+, FLSA and Excess Benefit Transaction Excise tax | ✓ | ? |

WHY CHOOSE TO BE INSURED WITH USLI?

One of only 20 A++ rated insurance groups in the United States by A.M. Best
A proud member of the Berkshire Hathaway Group, recently voted the #1 most admired property and casualty company in the world (Fortune Magazine)
Broad protections for individual directors and officers

Insure your financial well-being with a stable company that will be there to pay your claim.

Enclosed you will find **an admitted** renewal Non Profit Directors & Officers Liability quote for Quantum Park Owners Association. The Expiring policy number is NDO1020104K and the expiration date is 3/22/2013.

The quote includes an offer for a three year policy term.  You still only pay the premium annually and the annual renewal premium will not increase over the three year term!  In addition, the policy will reinstate its aggregate at each anniversary. Furthermore, there are no renewal applications for three years.  You get the benefits that three year policies provide without losing the advantage of an annual policy.  Refer to  DO-3YR-FL for terms and conditions.

**Section I-**    Details the premiums, taxes and fees associated with this account. In addition, it provides the Underwriting Notes and covers any of the additional underwriting information that might be needed prior to binding or within 21 days of the inception date.

**Section II-**   Lists the required coverage forms, notices, endorsements and exclusions.

*In addition* we have included some materials that will assist in the evaluation of this offer of coverage.

- A pre-filled application that includes the information you have already provided.
- Endorsement DO-283 Data & Security Endorsement for your review.
- A Point of Sale piece that provides some claims scenarios this account may encounter and a coverage checklist that can be compared to the quotation of another carrier.

For your convenience, an area on page 1 of the quote has been provided to record your requested effective date.

**We invite you to contact us to discuss the benefits of any coverages, the costs associated or simply to provide feedback! We welcome the opportunity to talk with you about this quote.**

Thank you for the opportunity to quote this account!

Cover letter

UNITED STATES LIABILITY INSURANCE GROUP
A BERKSHIRE HATHAWAY COMPANY

May 22, 2013

Mr. Fiorenzo Bresolin
**Quantum Park Owners Association**
2500 Quantum Lakes Drive
Suite 101
Boynton Beach, FL 33426

| | |
|---|---|
| **RE:** | **Quantum Park Owners Association** |
| **Policy Type:** | **Non Profit Professional Liability** |
| **Policy No.:** | **NDO1020104L        03/22/2013 to 03/22/2014** |
| **Our Claim No.:** | **K071573** |
| **Plaintiffs:** | **Olen Properties Corp., Secured Holdings, Inc., Quantum Lake Villas II Corp and Villas at Quantum Lakes, Inc.** |

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Dear Mr. Bresolin:

United States Liability Insurance Company (the "Company") acknowledges receipt of a Motion to Appoint Receiver And/Or Custodian filed In the Circuit Court of the 15th Judicial Circuit, In and for Palm Beach County, Florida (Case No.: 502013CA007694XXXXMB AH) titled Olen Properties Corp., Secured Holdings, Inc., Quantum Lake Villas II Corp and Villas at Quantum Park Property Owners' Association, Inc., Douglas MacDonald, Fiorenzo Bresolin, Eugene Gerlica, Heather Rintoul, Canterbury at Quantum Village Property Owners Association of Palm Beach, Inc., Quantum Park Overlay Dependent District, Duke PGC at Quantum 1-9, LLC, Parkside Townhomes Homeowners Association, Inc., Gateway LLC, Quantum LLC, 2600 Quantum LLC, 4925 Park Ridge Boulevard, LLC, 7 Eleven, Inc., Aetna Life Insurance Company, Enterprise Leasing Company of Florida, LLC a/k/a Alamo Rent a Car, Boynton Lodge No. 236 Free and Accepted Masons of Florida, Ed Carey Design, Inc. Carmax Auto Superstores, Inc. a/k/a Carmax, Charter Schools of Boynton Beach, Inc., Children's Services Council of Palm Beach County, City of Boynton Beach, East Coast Mechanical, Inc., G.T. Investment Group, LLC, High Ridge Investments, LLC, HVG Enterprises, LLC, KTR South Florida, LLC, The Palm Beach Literacy Coalition,

**EXHIBIT**

**2**

Inc., Publix Super Markets, Inc., Safety-Kleen Systems, Inc., The American Bottling Company, United Way of Palm Beach County, Inc., W2007 Equity Inns Realty, LLC, Watershed Treatment Programs, Inc., Bank of America Corporation, Quantum Limited Partners, Ltd. and Bank United Financial Corporation as a Claim made under the Policy. As Board Members of Quantum Park Owners Association (the "Insured"), you along with Douglas MacDonald, Eugene Gerlica and Heather Rintoul qualify as an Individual Insured under the Policy. While during our telephone discussion from May 20, 2013 you advised that the Insured seeks for the Company to afford coverage for defense of this Claim on behalf of all of the defendants, for the reasons set for in this letter, regrettably the Policy does not afford coverage to defendants in the Complaint with the exception of you, Mr. MacDonald, Mr. Gerlica, Ms. Rintoul and the Insured.

The Policy affords limits to $1,000,000 each claim and the same limit in the Policy aggregate. There is no Retention limit under the Policy.

According to the Motion filed by the Plaintiffs, they allege they have owned parcels or have otherwise held an ownership interest in certain parcels of real property in the Quantum Park. The Plaintiffs allege that all of the defendants named in this action, other than the Insured and its Board Members, are lot or parcel owners in Quantum Park and are also members in the Insured whose voting and membership rights may be impacted by the actions of the Insured.

The Plaintiffs allege Quantum Park was created through the recordation of its Declaration of Protective Covenants in the public records of Palm Beach County in 1987. The Plaintiffs further contend that the Insured and its Board Members have controlled a majority of the Board of the Insured and consequentially have controlled the operation of the Insured since approximately 1998. The Plaintiffs allege that the Board Members collectively in the names of their related companies own less than 4 percent of the properties situated in Quantum Park yet continue to control the Insured. The Plaintiffs further contend that in the past, certain community associations situated within Quantum Park (including Parkside and Canterbury) were given membership and voting rights in the Insured based on the number of acres each associated operated. Prior to the 2013 annual meeting, the Plaintiffs allege the individual homeowners in these associates had never been given voting or membership rights and have never been directly assessed by the Insured for assessments or dues. The Plaintiffs claim that for at least the past ten years, the Insured has never achieved a quorum for the purpose of conducting an annual meeting or election. Rather, they contend that Mr. MacDonald has simply appointed and re-appointed Board Members of his choosing. Plaintiffs claim that the members of the Insured, including the Plaintiffs, have never had an opportunity to actually elect any members of the Board.

As a result of the foregoing, the Plaintiffs claim that the appointment of Receiver and/or Custodian is warranted to properly conduct and oversee the annual election including the determination of which persons are entitled to vote and other facets of the Board's

functions. In addition, the Plaintiffs also seek to have the Insured and its Board Members issue refunds with interests to all those members, including the Plaintiffs, who have overpaid their assessments for the period of time covered by the applicable statute of limitations and award any other relief deemed just and proper.

Following review of the Insured's Policy with the Company and the allegations asserted against the Insured and it Board Members in the Motion, the Company agrees to provide coverage for this Claim, subject to the Policy terms, conditions and provisions.

Subject to a Reservation of Rights, the Company will appoint the defense of the Insured and its Board Members to the law firm of Milber, Makris, Plousadis & Seiden located at 1900 N.W. Corporate Boulevard, East Tower, Suite 440, Boca Raton, Florida. If you have any questions concerning the defense being provided, please ask for Timothy P. Lewis, Esquire of the firm at (561) 994-7310. Additionally, no defense costs may be incurred or settlements made by the Insured or its Board Members without the Company's written consent. If defense costs are incurred or if settlements are made by Insured or its Board Members without the Company's written consent, we will not be liable for them.

Endorsed on the Insured's Policy with the Company is Coverage Form DO-100 (04-07) entitled COVERAGE PART A. NON PROFIT DIRECTORS AND OFFICERS LIABILITY. Number I. on this Coverage Form is the section entitled INSURING AGREEMENT which states as follows:

    I. INSURING AGREEMENT

    A.    The **Company** will pay on behalf of the **Insured Loss** excess of the Retention not exceeding the Limit of Liability for which this coverage applies that the **Insured** shall become legally obligated to pay because of **Claims** first made against the **Insured** during the **Policy Period** or during the Extension Period, if applicable, for **Wrongful Acts** arising solely out of an Insured's duties on behalf of the **Organization**.

    B.    The **Company** has the right and duty to defend any **Claim** to which this insurance applies, even if the allegations of the **Claim** are groundless, false, or fraudulent. The **Company** may investigate any **Claim** and settle any **Claim** with the Insured's consent as the **Company** deems expedient, but the **Company** is not obligated to pay any **Loss** or defend any **Claim** after the Limit of Liability has been exhausted by payments of **Loss**.

Under Number III. of this Coverage Form is the section entitled DEFINITIONS which defines the following terms:

F.      "**Employee**" means any natural person whose labor or service is engaged by and directed by the **Organization** while performing duties related to the conduct of the **Organization's** business and includes leased, part-time, seasonal and temporary workers, independent contractors, volunteers and interns. An **Employee's** status as an **Insured** will be determined as of the date of the **Wrongful Act** that results in a **Claim**.

G.      "**Individual Insureds**" means any persons who were, now are, or shall be directors, trustees, officers, **Employees,** or committee members of the **Organization**, including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy.

H.      "**Insured(s)**" means the **Organization** and the **Individual Insureds**.

I.      "**Loss**" means damages, settlements, pre-judgment and post judgment interest awarded by a court and punitive or exemplary damages to the extent such damages are insurable under applicable law, but does not include fines, penalties, taxes, the multiplied portion of any multiple damage award, and other monetary sanctions that are uninsurable by operation of law.

For the purpose of determining the insurability of punitive damages and exemplary damages, the laws of the jurisdiction most favorable to the insurability of such damages shall control, provided that such jurisdiction has a substantial relationship to the relevant **Insured** or to the **Claim** giving rise to the damages.

J.      "**Organization**" means:

    (1)    The **Parent Organization**;

    (2)    Any **Subsidiary** of the **Parent Organization**; or

    (3)    Any entity in its capacity as a debtor in possession of (1) or (2) above under the United States bankruptcy law or equivalent status under the law of any other jurisdiction.

L.      "**Parent Organization**" means the entity named in ITEM I. of the Policy Declarations.

O.      "**Subsidiary**" means any nonprofit entity which is more than 50% owned or controlled by the **Parent Organization** as of the effective date of this Policy and is disclosed as a subsidiary in an **Application** to the **Company**.

A non profit entity formed or acquired after the effective date of this Policy is a **Subsidiary** if:

(1)      its assets total less than 25% of the total consolidated assets of the **Parent Organization** at the time of formation or acquisition; and

(2)      the formation or acquisition with full particulars about the new **Subsidiary** has been disclosed to the **Company** by the **Parent Organization** as soon as practicable but no later than the expiration date of the Policy, or effective date of cancellation or nonrenewal of this Policy.

Any non profit entity formed or acquired after the effective date of this Policy whose assets total more than 25% of the total consolidated assets of the **Parent Organization** or any for profit entity formed or acquired after the effective date of this Policy is a **Subsidiary** only if:

(1)      the **Parent Organization** provides written notice to the **Company** of such **Subsidiary** as soon as practicable, but not later than sixty (60) days of the formation or acquisition of the **Subsidiary**; and

(2)      the **Parent Organization** provides the **Company** with such information as the **Company** may deem necessary to determine insurability of the **Subsidiary**; and

(3)      the **Parent Organization** accepts any special terms, conditions, exclusions, limitations or premium imposed by the **Company**; and

(4) the **Company**, at its sole discretion, agrees to insure the **Subsidiary**.

A **Subsidiary** which is sold or dissolved:

(1)      after the effective date of this Policy and which was an **Insured** under this Policy; or

(2)      prior to the effective date of this Policy and which was an **Insured** under a prior Policy issued by the **Company**;

shall continue to be an **Insured**, but only with respect to **Claims** first made during this **Policy Period** or Extended Reporting Period, if applicable, arising out of **Wrongful Acts** committed or allegedly committed during the time the entity was a **Subsidiary** of the **Parent Organization.**

P.    **"Wrongful Act"** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duties, or **Personal Injury Act** committed or allegedly committed;

    (1)    by the **Organization**; or

    (2)    by the **Individual Insureds** arising solely from duties conducted on behalf of the **Organization** or asserted against an **Individual Insured** because of (1) above. It is further agreed that the same **Wrongful Act**, an interrelated series of **Wrongful Acts** or a series of similar or related **Wrongful Acts** by one or more **Insureds** shall be deemed to be one **Wrongful Act** and to have commenced at the time of the earliest **Wrongful Act**.

Based upon the aforementioned Policy definitions respecting the Insured Organization, Individual Insureds and Subsidiary, neither Canterbury at Quantum Village Property Owners Association of Palm Beach, Inc., Quantum Park Overlay Dependent District, Duke PGC at Quantum 1-9, LLC, Parkside Townhomes Homeowners Association, Inc., Gateway LLC, Quantum LLC, 2600 Quantum LLC, 4925 Park Ridge Boulevard, LLC, 7 Eleven, Inc., Aetna Life Insurance Company, Enterprise Leasing Company of Florida, LLC a/k/a Alamo Rent a Car, Boynton Lodge No. 236 Free and Accepted Masons of Florida, Ed Carey Design, Inc. Carmax Auto Superstores, Inc. a/k/a Carmax, Charter Schools of Boynton Beach, Inc., Children's Services Council of Palm Beach County, City of Boynton Beach, East Coast Mechanical, Inc., G.T. Investment Group, LLC, High Ridge Investments, LLC, HVG Enterprises, LLC, KTR South Florida, LLC, The Palm Beach Literacy Coalition, Inc., Publix Super Markets, Inc., Safety-Kleen Systems, Inc., The American Bottling Company, United Way of Palm Beach County, Inc., W2007 Equity Inns Realty, LLC, Watershed Treatment Programs, Inc., Bank of America Corporation, Quantum Limited Partners, Ltd. nor Bank United Financial Corporation qualify as Insureds under the Policy. Accordingly, the Company denies coverage to them on this basis.

The Company is, however, prepared to pay Loss as defined on behalf of the Insured and its Board Members under the Insuring Agreement up to the Policy Limit as a result of any Wrongful Acts as defined and deemed committed by the Insured and its Board Members with the exception of any of the asserted claims being barred from coverage to pay Loss due to Policy Exclusion.

Under number IV. of this Coverage Form is the section entitled EXCLUSIONS. Letter C. under this portion states as follows:

The **Company** shall not be liable to make payment for **Loss** or **Defense Costs** in connection with any **Claim** made against the **Insured** arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

C.     Any of the **Insureds** gaining any profit, remuneration or advantage to which the **Insured** was not legally entitled provided, however, this exclusion shall not apply unless and until a final adjudication or judgment is rendered against the **Insured** as to this conduct;

To the extent that any of Plaintiffs' claims are later deemed to fall within the purview of Exclusion C., the Company would have no obligation to provide coverage to pay Loss under the Insuring Agreement on behalf of the Insured and its Board Members. Accordingly, the Company reserves the right to deny coverage to pay Loss on behalf of the Insured and its Board Members on this basis.

The Company's determination is based upon presently known facts and circumstances and is subject to further evaluation to the extent that additional information later becomes available. The Company maintains its right to assert additional terms and provisions under the Policy and at law which may later become applicable as new information is learned.

The contents of this letter should not be construed as a waiver of any other rights or defenses which the Company may have under the Policy. If you would like to discuss this further, please feel free to contact me at (888) 523-5545, extension 2061.

Very truly yours,

Brian D. Montague
Claims Examiner

c:      Ms. Maria McLaughlin
        Assistant Account Executive
        Hull & Company, Inc.
        1815 Griffin Road, Suite 300
        Dania Beach, FL 33004

        Ms. Debbie Headberg, Commercial Lines Account Manager
        Massey Clark Fischer, Inc.
        Insurance & Financial Services
        400 Executive Center Drive, Suite 205
        West Palm Beach, FL 33401

        Charles W. Edgar, III, Esquire
        Cherry, Edgar & Smith, P.A.
        Attorneys at Law
        8409 N. Military Trail, Suite 123
        Palm Beach Gardens, FL 33410

        Timothy P. Lewis, Esquire
        Milber, Makris, Plousadis & Seiden
        1900 N.W. Corporate Boulevard
        East Tower, Suite 440
        Boca Raton, FL 33431

**UNITED STATES LIABILITY INSURANCE GROUP**
A BERKSHIRE HATHAWAY COMPANY

May 28, 2013

Mr. Fiorenzo Bresolin
**Quantum Park Owners Association**
2500 Quantum Lakes Drive
Suite 101
Boynton Beach, FL 33426

| | |
|---|---|
| RE: | **Quantum Park Owners Association** |
| Policy Type: | **Non Profit Professional Liability** |
| Policy No.: | **NDO1020104L        03/22/2013 to 03/22/2014** |
| Our Claim No.: | K071573 |
| Plaintiffs: | **Olen Properties Corp., Secured Holdings, Inc., Quantum Lake Villas II Corp and Villas at Quantum Lakes, Inc.** |

**CERTIFIED MAIL
RETURN RECEIPT REQUESTED**

Dear Mr. Bresolin:

This letter will serve to acknowledge United States Liability Insurance Company's (the "Company") receipt of your e-mail dated May 28, 2013 and also serves as a follow up to our telephone conversation from this morning whereby you expressed that Quantum Park Owners Association (the "Insured") finds it to be unacceptable to have the law firm of Milber, Makris, Plousadis & Seiden represent its interests as well as the interest of you, Douglas MacDonald, Eugene Gerlica and Heather Rintoul in the Motion to Appoint Receiver And/Or Custodian filed In the Circuit Court of the 15th Judicial Circuit, In and for Palm Beach County, Florida (Case No.: 502013CA007694XXXXMB AH) titled <u>Olen Properties Corp., Secured Holdings, Inc., Quantum Lake Villas II Corp and Villas at Quantum Lakes, Inc. v. Quantum Park Property Owners' Association, Inc., Douglas MacDonald, Fiorenzo Bresolin, Eugene Gerlica, Heather Rintoul, Canterbury at Quantum Village Property Owners Association of Palm Beach, Inc., Quantum Park Overlay Dependent District, Duke PGC at Quantum 1-9, LLC, Parkside Townhomes Homeowners Association, Inc., Gateway LLC, Quantum LLC, 2600 Quantum LLC, 4925 Park Ridge Boulevard, LLC, 7 Eleven, Inc., Aetna Life Insurance Company, Enterprise Leasing Company of Florida, LLC a/k/a Alamo Rent a Car, Boynton Lodge No. 236 Free</u>

EXHIBIT

3

and Accepted Masons of Florida, Ed Carey Design, Inc. Carmax Auto Superstores, Inc. a/k/a Carmax, Charter Schools of Boynton Beach, Inc., Children's Services Council of Palm Beach County, City of Boynton Beach, East Coast Mechanical, Inc., G.T. Investment Group, LLC, High Ridge Investments, LLC, HVG Enterprises, LLC, KTR South Florida, LLC, The Palm Beach Literacy Coalition, Inc., Publix Super Markets, Inc., Safety-Kleen Systems, Inc., The American Bottling Company, United Way of Palm Beach County, Inc., W2007 Equity Inns Realty, LLC, Watershed Treatment Programs, Inc., Bank of America Corporation, Quantum Limited Partners, Ltd. and Bank United Financial Corporation. Rather, you have advised that the Insured has decided to have Irwin R. Gilbert from the law firm of Gilbert / Yarnell to represent its interests with the assistance of Stanley Dale Klett, Jr. from the law firm of Klett, Mesches & Johnson.

For the reasons cited in the Company's reservation of rights letter dated May 22, 2013, we remain committed to appointing counsel to represent the Insured and its Board Members in this matter through the Milber firm. Should the Insured remain steadfast in having Mr. Gilbert and Mr. Klett represent its interests, the Company fully supports your decision to do so. However, no defense costs may be incurred or settlements made by the Insured or its Board Members without the Company's written consent. If defense costs are incurred or if settlements are made by Insured or its Board Members without the Company's written consent, we will not be liable for them. Such would include any defense services incurred by the Insured through the Gilbert and Klett law firms.

Endorsed on the Insured's' Policy with the Company is Policy Jacket numbered USL-DOJ (04-07) entitled **Non Profit Professional Liability Policy.** Referenced under number II. in this Jacket is the section entitled DEFENSE AND SETTLEMENT which states, in part, the following under letter A.:

> The **Insured** shall not, except at personal cost, make any offer, any payment, admit any liability, settle any **Claim**, assume any obligation or incur any expense without the **Company's** written consent.

Please be advised that the Insured's retention of the Gilbert and Klett law firms was done without the Company's written consent. Accordingly, all fees and expenses incurred by the Gilbert and Klett law firms on behalf of the Insured and its Board Members both prior and subsequent to the Company's initial notice of this lawsuit on May 16, 2013 would be at the personal expense of the Insured. Additionally, the Company will neither directly pay the Gilbert or Klett law firms for defense services incurred nor reimburse the Insured for payments made to them whether their services are immediately terminated or if they continue to remain involved in this matter

The Company maintains that the Milber firm is fully capable of representing the Insured and its Board Members in this matter. Moreover, the selection of counsel for such representation rests solely with the Company. Under number **I.** of Coverage Form

number DO-100 (04-07) entitled COVERAAGE PART A. NON PROFIT DIRECTORS AND OFFICERS LIABILITY, the Policy states as follows under letter B.:

> The **Company** has the right and duty to defend any **Claim** to which this insurance applies, even if the allegations of the **Claim** are groundless, false or fraudulent.

Additionally, under number III. of Coverage Form DO-100 (04-07) entitled COVERAGE PART A. NON PROFIT DIRECTORS AND OFFICERS LIABILITY is the section entitled DEFINITIONS which defines the following term:

> D.    **"Defense Costs"** means reasonable and necessary legal fees and expenses incurred by the **Company,** or by any attorney designated by the **Company** to defend the **Insureds,** resulting from the investigation, adjustment, defense and appeal of a **Claim. Defense Costs** includes other fees, costs, costs of attachment or similar bonds (without any obligation on the part of the **Company** to apply for or furnish such bonds), but does not include salaries, wages, overhead or benefits expenses of the **Insured.**

Therefore, and with the foregoing in mind, if the Insured solely desires to have the Gilbert and Klett firms represent its interest, please write back to the Company to not only certify this again but to indicate that the Insured will be withdrawing its claim for coverage from the Company. By doing so, the Company will close its claim file. If, however, the Insured changes its decision and agrees to have the Milber firm appear as counsel to represent its interest, please let the Company know of that as well.

The Company's determination continues to be based upon all presently known facts and circumstances and is subject to further evaluation to the extent that additional information later becomes available. The Company also continues to reserve its right to assert any additional terms and provisions under the Policy and at law which may later become applicable as new information is learned.

The contents of this letter should not be construed as a waiver of any rights or defenses which the Company may have under the Policy. If you would like to discuss this further, please feel free to contact me at (888) 523-5545, extension 2061.

Very truly yours,

*Brian D. Montague*

Brian D. Montague
Claims Examiner

c:    Ms. Maria McLaughlin
Assistant Account Executive
Hull & Company, Inc.
1815 Griffin Road, Suite 300
Dania Beach, FL 33004

Ms. Debbie Headberg, Commercial Lines Account Manager
Massey Clark Fischer, Inc.
Insurance & Financial Services
400 Executive Center Drive, Suite 205
West Palm Beach, FL 33401

Charles W. Edgar, III, Esquire
Cherry, Edgar & Smith, P.A.
Attorneys at Law
8409 N. Military Trail, Suite 123
Palm Beach Gardens, FL 33410

Irwin R. Gilbert, Esquire
Gilbert / Yarnell
11000 Prosperity Farms Road
Suite 205
Palm Beach Gardens, FL 33410

Stanley Dale Klett, Jr., Esquire
Klett, Mesches & Johnson, P.L.
2855 PGA Boulevard
Suite 100
Palm Beach Gardens, FL 33410-2910

Timothy P. Lewis, Esquire
Milber, Makris, Plousadis & Seiden
1900 N.W. Corporate Boulevard
East Tower, Suite 440
Boca Raton, FL 33431

LAW OFFICES

# LUKS, SANTANIELLO,
# PETRILLO & JONES

301 YAMATO ROAD
SUITE 1234
BOCA RATON, FL 33431
TELEPHONE: 561-893-9088
FAX: 561-893-9048

110 SE 6TH STREET, 20TH FLOOR
FORT LAUDERDALE, FL 33301
TELEPHONE: 954-761-9900
FAX: 954-761-9940

100 N. TAMPA STREET
SUITE 2120
TAMPA, FL 33602
TELEPHONE: 813-226-0081
FAX: 813-226-0082

301 W. BAY STREET
SUITE 1050
JACKSONVILLE, FL 32202
TELEPHONE: 904-791-9191
FAX: 904-791-9196

2509 BARRINGTON CIRCLE
SUITE 109
TALLAHASSEE, FL 32308
TELEPHONE: 850-385-9901
FAX: 850-727-0233

150 W. FLAGLER STREET
SUITE 1675
MIAMI, FL 33130
TELEPHONE: 305-377-8900
FAX: 305-377-8901

255 S. ORANGE AVENUE
SUITE 750
ORLANDO, FL 32801
TELEPHONE: 407-540-9170
FAX: 407-540-9171

## FAX TRANSMISSION COVER SHEET

**DATE:**              July 30, 2013

**SENDING TO:**        Mr. Irwin Gilbert

**FAX #:**             561-799-1904

**FROM:**              DANIEL J. SANTANIELLO, ESQUIRE

**RE:**   Olen Properties Corp., Secured Holdings, Inc., Quantum Lake Villas II
          **OUR FILE NO.    :     USL-16826H**

          **TOTAL PAGES (including cover page:      7**

**SPECIAL INSTRUCTIONS: Please see the attached letter. Thank you.**

The information contained in this transmission is attorney-client privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. You should return the original in an envelope to the above address and we will reimburse your postage.

**EXHIBIT**

**4**

Stonegate Bank Plaza
301 Yamato Road, Suite 1234
Boca Raton, FL 33431

Phone:    (561) 893-9088
Facsimile: (561) 893-9048

E-Mail:   DJS@LS-Law.com
Website:  LS-Law.com

# Luks Santaniello

# Petrillo & Jones

July 30, 2013

**VIA FACSIMILE: 561-799-1904**
Mr. Irwin Gilbert
Gilbert Yarnell
11000 Prosperity Farms Road, Suite 205
Palm Beach Gardens, FL 33410

RE:  OLEN PROPERTIES CORP., SECURED HOLDINGS, INC., QUANTUM LAKE
     VILLAS II                :
     Case No.          :      502013CA007694XXXXMB AH
     Our File No.      :      USL-16826H
     Claim No.         :      K071573

Dear Mr. Gilbert:

Please be advised that we have been retained by United States Liability Insurance
Company (hereinafter "USLIC") to represent it with respect to coverage and alleged "bad
faith" issues regarding the Olen Properties Corp. et. al. v. Quantum Park Property Owners
Association, Inc., et. al., lawsuit.  This letter is USLIC'S response to your letter dated July
12, 2013, wherein you suggest that USLIC has acted in bad faith due to its failure to
consider its insureds' rejection of USLI's offer to defend them through "less experienced
counsel" and their offer to retain you and Mr. Klett to represent them.[1]

With respect to your suggestion that USLIC acted in bad faith by not seeking to
negotiate with you and your firm so that it could provide a defense to its insureds through
you and your firm (and Mr. Klett and his firm) – your claim is without merit.  Your clients
have sought coverage for the aforementioned claim/lawsuit under the policy at issue issued
by USLIC.  Under that policy, USLIC not only has a duty to defend covered claims, but it
also has a "right" to provide such a defense.  As the Court in Travelers Indemnity Co. v.
Royal Oak Enterprises, Inc., 344 F.Supp.2d 1358 (M.D. Fla. 2004), noted: "The [insurer's]
right to control the defense is 'a valuable one in that it reserves to the insurer the right to
protect itself against unwarranted liability claims and is essential in protecting its financial
interest in the outcome of litigation." See id., at 1374.

---

[1] To the extent that your July 22, 2013 letter (received on July 25, 2013) similarly suggests that USLIC will
eventually have to pay for your fees in this matter, this responds to that letter as well.

Irwin Gilbert
July 30, 2013
Page 2

In his letters dated May 28, 2013 and July 3, 2013, Mr. Montague already referred you to the portions of the policy that pertain to the insureds' duty to cooperate and to USLIC'S right to control the defense of this matter – so long as the insureds seek coverage under the subject policy. For example, the section of the policy titled "I. INSURING AGREEMENT", the Policy provides: ". . . B. The Company has the right and duty to defend any Claim to which this insurance applies, even if the allegations of the Claim are groundless, false, or fraudulent."

Other relevant portions of the policy provide:

D.    **"Defense Costs"** means reasonable and necessary legal fees and expenses incurred by the **Company,** or by any attorney or designated by the **Company** to defense the **Insureds,** resulting from the investigation, adjustment, defense and appeal of a **Claim. Defense Costs** includes other fees, costs, costs of attachment or similar bonds (without any obligation on the part of the **Company** to apply for or furnish such bonds), but does not include salaries, wages, overhead or benefits expenses of the **Insured**.

...

II.    DEFENSE AND SETTLEMENT

A.    The **Insured** shall not demand or agree to arbitration of any **Claim** without the written consent of the **Company.** The **Insured** shall not, except at personal cost, make any offer, any payment, admit any liability, settle any **Claim,** assume any obligation or incur any expense without the **Company's** written consent.

B.    If a **Claim** is made against an **Insured** for **Loss** that is both covered and uncovered by this Policy, the **Company** will pay one hundred percent (100%) of **Defense Costs** for the **Claim** until such time that the Limits of Liability of this Policy are exhausted by payment of a covered **Loss** or the **Claim** for the covered **Loss** is resolved by settlement, verdict or summary judgment.

C.    The **Company,** as it deems expedient, has the right to investigate, adjust, defend, appeal and, with the consent of the **Insured,** negotiate the settlement of any **Claim** whether within or above the Retention. If the **Insured** refuses to consent to a settlement recommended by the **Company,** the **Company** is not obligated to pay any **Loss** or defend the Claim after the Limit of Liability has been exhausted by payment of **Loss.**
The **Company's** obligation to the Insured for **Defense Costs** and **Loss** attributable to such **Claim**(s) shall be limited to:

(a)    The amount of the covered **Loss** in excess of the Retention which the **Company** would have paid in settlement at the time the **Insured** first refused to settle;

(b)    Plus covered **Defense Costs** incurred up to the date of the **Insured** first refused to settle;

Irwin Gilbert
July 30, 2013
Page 3

> (c)    Plus seventy-five percent (75%) of covered **Loss** and **Defense Costs** in excess of the first settlement amount recommended by the **Company** to which the **Insured** did not consent.

It is understood that payment of (a), (b) and (c) above is the limit of the **Company's** liability under this Policy on any **Claim** in which the **Insured** fails or refuses to consent to the **Company's** settlement recommendation, subject at all times to the Limits of Liability and Retention provisions of the applicable coverage section. The remaining twenty-five percent (25%) of **Loss** and **Defense Costs** in excess of the amount referenced in (a) and (b) above shall be the obligation of the **Insured**.

D.    The **Insured** agrees to cooperate with the **Company** on all **Claims**, and provide such assistance and information as the **Company** may reasonably request. Upon the **Company's** request, the **Insured** shall submit to examination and interrogation by a representative of the **Company**, under oath if required, and shall attend hearings, depositions and trials and shall assist in the conduct of suits, including but not limited to effecting settlement, securing and giving evidence, obtaining the attendance of witnesses, giving written statements to the **Company's** representatives and meeting with such representatives for the purpose of investigation and/or defense, all of the above without charge to the **Company**. The **Insured** further agrees not to take any action which may increase the **Insured's** or the **Company's** exposure for **Loss** or **Defense Costs**.

E.    The **Insured** shall execute all papers required and shall do everything that may be necessary to secure and preserve any rights or indemnity, contribution or apportionment which the **Insured** or the **Company** may have, including the execution of such documents as are necessary to enable the **Company** to bring suit in the **Insured's** names, and shall provide all other assistance and cooperation which the **Company** may reasonably require.

...

## XIV.  ACTION AGAINST THE COMPANY

A.    No action shall lie against the **Company** unless as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, and until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant or the claimant's legal representative, and the **Company**.

There is no suggestion in your letter that USLIC has (as it has not) forced its insureds to seek alternate counsel due to inadequate representation. Indeed, USLIC has an obligation to provide its insureds with "adequate" representation – and that is exactly what USLIC has been attempting to do in this matter. Mr. Lewis and his firm are competent counsel who have experience handling these type of cases, and who can do so quite well. Furthermore, there are no facts here that would support a finding that USLIC forfeited its

Irwin Gilbert
July 30, 2013
Page 4

right to control the defense of the case – as would be the case if, for example, it initially
denied the claim in full, and did not provide a defense – only to later, after the insured
retained its own counsel – changing its position on coverage and offering to take over the
defense.  See Bellshouth v. Church, 930 So. 2d 668 (Fla. 3d DCA 2006).

Rather, the gist of the matter here is that the insureds would prefer to have you and
Mr. Klett as their counsel, and would also prefer if USLIC would pay for your fees, and
those of Mr. Klett's, incurred in representing the insureds.

While the insureds may have good reasons for selecting you and Mr. Klett as
defense counsel, and while you and Mr. Klett may be very well qualified attorneys to
provide a defense of the insureds – once a demand for coverage was made against USLIC,
it is USLIC'S choice, alone, of who it wants to retain to defend the lawsuit.  This is not a
situation where the insurer has denied the claim, and defense, outright – or even a
situation where the insurer has denied that the claim is covered, but offered to defend the
claim under a full reservation of rights while it seeks a declaratory judgment to establish
that the claim is not covered and that it has no obligation to defend the case.  Under such
circumstances, it very well may be that the insurer would have passed to the insured the
right to control the defense – and then there might be a possibility that you could obtain,
for your insureds, a declaration USLIC should pay for the fees the insured incurred, through
you and Mr. Klett, to defend the case (assuming you establish coverage, and a court
decides that, under the circumstances, USLIC should pay for your fees).[2]  But, here, USLIC
has offered a defense through competent counsel and has not denied coverage for all of the
claims asserted in the lawsuit.  USLIC merely pointed out in its initial letters acknowledging
receipt of the claim that some of the allegations may lead to the entry of a judgment that
could trigger an exclusion in the policy, and, in the July 3, 2013 letter, that the insureds
have a duty to cooperate, the failure of which could result in prejudice to USLIC and give
rise to a reason for the denial of the claim.  These are not the type of "reservations of rights"
that could potentially transfer to the insureds the right to control the defense of the lawsuit.
See United States Fire Ins. Co. v. Mikes, 576 F.Supp.2d 1303 (M.D. Fla. 2007) (Standing for
the proposition that an insurer can be deemed to have breach its obligation to indemnify if
the insurer unequivocally denies coverage for a claim that is later determined to be
covered.  Mere ROR letters, or letters indicating generally the insurer's position on
coverage, but not denying the claim, do not constitute such a denial, and therefore a
unilateral settlement entered into by the insured without the consent of the insurer need
not be paid by the insurer).  Furthermore, in its July 3, 2013, letter, USLIC did not issue any

---

[2] See Travelers Indemnity v. Royal Oak, 344 F.Supp.2d 1358 (M.D. Fla. 2004)(noting that offering to provide a
defense under an ROR is not a breach of the duty to defend; and that it is not clear whether an insured who rejects a
defense offered by the insurer under an ROR will later be able to recover those defense costs).  We note, again, that
USLIC's offer to defend here was not conditional.  Merely pointing out that a portion of the claims may not be
covered under the policy does not transform the offer to defend into an offer to provide a conditional defense.
Florida requires insurers to defend all claims in a lawsuit even when only some of the claims are covered, and others
are clearly not.  It would be quite strange for a court to find that an insurer gives away its right to defend a lawsuit
simply because it points out that some of the claims alleged in the lawsuit fall outside of the coverage provided in
the policy, such as, for example, in a case where the complaint includes a count for punitive damages, where the
insurer's policy excludes coverage for punitive damages.

Irwin Gilbert
July 30, 2013
Page 5

"reservation of rights" at all – it merely continued to offer a defense, and requested the insureds' cooperation with this effort to assign counsel.

There is no support in any case law supporting your assertion that USLIC's "good faith" obligations incorporate a duty to relinquish control of the defense of the lawsuit, or a duty to negotiate with counsel preferred to by the insured to determine whether it, the insurer, would retain such counsel, instead of counsel of its own choice. Rather, under Florida law and well established insurance law, the only time the insurer needs to consult with, and obtain the consent of, the insured with respect to retaining counsel is when the insurer raises a "coverage defense" pursuant to the Florida Claims Administration Statute. A true "coverage defense" is a defense to coverage that would otherwise exist as a result of the insureds' breach of a policy duty or condition. To date, USLIC has not raised such a "coverage defense"[3] – and, therefore, it has no obligation to retain "mutually agreeable" counsel.

USLIC has previously offered, and has continued to offer, to provide its insureds with a more than adequate defense – to no avail. In spite of clear rejection by the insureds of the defense offered, USLIC reiterates its offer to provide a defense to the Board and the individual board members in the subject lawsuit, through Mr. Lewis and his firm. The insured and the individual board members should thus be aware that if they persist in their decision to deny USLIC of its right to control the defense of this matter, they will put in jeopardy the coverage that would be provided under the subject policy to pay for settlements or judgments arising from covered claims in the subject lawsuit. They should also be aware that they do, nonetheless, have the right to retain your services, **at their own expense**, to supplement the defense to be provided by counsel selected by USLIC, without jeopardizing their right to seek indemnity from USLIC for settlements and judgments arising out of covered claims.

In sum, USLIC has the right to control the defense of the subjected lawsuit, and it has retained competent counsel to provide such a defense. The insured's rejection of this defense is, in essence, depriving USLIC of some of its rights under the subject policy. Unless the insured and the board members change course in this respect (by accepting USLIC'S offer to defend them through Mr. Lewis and his firm), they will continue to put in jeopardy the coverage provided under the subject policy. Under such circumstances, for example, USLIC may not be obligated to indemnify the insured and the board members with respect to any settlement reached upon by the parties' without the written consent of USLIC.

While USLIC could have provided its insureds with a defense through you and Mr. Klett, it acted within its rights (and good faith obligations) when it elected to use other counsel. The insured and the board members should, therefore, reconsider USLIC'S offer. By refusing our assigned counsel the ability to represent them, the insured and the board members run the risk that 1) they will not be reimbursed for the defense costs incurred by counsel of their unilateral choice (including fees); and 2) USLIC will not indemnify its

---

[3] The July 3, 2013 letter merely points out that the insureds have a duty to cooperate and their failure to do so may lead to prejudice to USLIC and, if such prejudice occurs, could then lead USLIC to raise this is a coverage defense.

Irwin Gilbert
July 30, 2013
Page 6

insureds for any resulting settlement or judgment, particularly with respect to settlements with respect to which USLIC has not given its written consent.

Finally, we disagree with your suggestion that we should pay you for your time incurred in providing us updates in this matter. As you know, the insured and the board members have continuously rejected the defense offered by USLIC. If they had not done so, USLIC would be paying Mr. Lewis and his firm for all defense work, including for time spent reporting to USLIC on the status of the lawsuit. The insured and the board members rejected this defense, and instead kept you and Mr. Klett on board.

In conclusion, Milber, Makris, Plousadis & Seiden remains ready, willing and able to defend Quantum Park Owners Association, Fiorenzo Bresolin, Douglas MacDonald, Eugene Gerlica and Heather Rintoul as USLIC is willing to provide the defense of this matter. We are more than happy to allow you to remain on as co-counsel in this matter so long as it is done at the insureds' own expense. Please do not hesitate to contact either of the undersigned should you wish to discuss this further.

Very truly yours,

DANIEL J. SANTANIELLO
JAMES P. WACZEWSKI

JPW/asr
USL-16826H/24

cc: Brian Montague



## MORRIS & MORRIS
### PROFESSIONAL ASSOCIATION

**Via Electronic Mail Only (djs@ls-law.com; jwaczewski@ls-law.com)**

*Privileged & Inadmissible Settlement Discussion; Without Prejudice*

6 June 2014

Daniel J. Santaniello, Esquire
James P. Waczewski, Esquire
Luks, Santaniello, Petrillo & Jones
301 Yamato Road, Suite 1234
Boca Raton, Florida 33431

   *Re: Olen Properties Corp., et al. v. Quantum Park, et al.*

Dear Messrs. Santaniello and Waczewski:

We have been retained by Quantum Park Owners Association (QP) to address the issue of compensation for QP's defense counsel in the ongoing Palm Beach County Circuit Court litigation addressed, among other places, in your 30 July 2013 letter to Irwin Gilbert, Esquire.

I understand the facts, in brief, to be these. QP was insured under United States Liability Insurance Company (USLIC) professional liability policy number NDO1020104J (the policy). QP was sued in Palm Beach Circuit Court and so notified USLIC that, by letter dated 22 May 2013, acknowledged that the action was a claim under the policy and agreed to provide a defense under reservation of rights, a position it has maintained. QP disputed the retention of USLIC designated defense counsel (Milber Makris) and retained Gilbert & Yarnell and Klett, Mesches & Johnson (defense counsel). Thereafter, letters were exchanged in which QP requested compensation, pursuant to the policy, for defense counsel's fees and USLIC denied that request, maintaining its willingness to provide a defense by Milber Makris. Milber Makris was unacceptable to the insured, which continues with defense counsel. The last communication I have seen on the issue was your letter to Mr. Gilbert in which, among other things, you reiterate USLIC's willingness to provide QP with a defense by Milber Makris. If I miss some facts you deem relevant or dispositive, or anything of this recitation is wrong, please say so.

I think we likely agree on relevant policy provisions and law governing the carrier's and insured's usual obligations so I omit reference to that and confine this letter to one issue, *viz.*, those circumstances under which the insured may, itself, select defense counsel whose fees and costs then become the obligation of the insured's carrier. I agree that the carrier retains the contractual right to assign defense counsel in the usual course but where, as here, the carrier defends under reservation of rights, it forfeits that right to the insured. Please *see, e.g., Regions Bank v. Commonwealth Land*



www.morris-morris.com

777 South Flagler Drive • Suite 800-West Tower • West Palm Beach, Florida 33401 • T: 561.838.9811 • F: 561.82
U.S. Bank Plaza • 980 9th Street, 16th Floor • Sacramento, California 95814 • T: 916.449.9915

**EXHIBIT**

**5**



MORRIS
&
MORRIS
PROFESSIONAL ASSOCIATION

Daniel J. Santaniello, Esquire
James P. Waczewski, Esquire
6 June 2014
Page Two

*Title Insurance Company*, 2013 WL 5603469 (S.D.Fla. 2013); *Mid-Continent Casualty Company v. American Pride Building Company, LLC*, 601 F.3d 1143 (11th Cir. (Fla.) 2010).

Your client's insured intends to continue the retention of defense counsel, vastly experienced and able in the type of litigation in which QP is involved and intimately acquainted with the parties and their history with each other. USLIC's defense under reservation both operated to divest it of the right to control the defense and concomitantly vested in QP the right to retain defense counsel of its choice whose expenses are a reimbursable defense cost under the policy. QP thus hereby proposes and requests that USLIC reimburse it for all of defense counsel's fees and costs incurred to date, as well as those that will be incurred through to conclusion of the ongoing litigation matter.

Please respond with your client's position on this request. We hope USLIC will acknowledge that the proposed resolution of the issue addressed is far preferable to a declaratory action to determine the parties' rights. Thank you, and I look forward to hearing from you.

Yours very truly,

Mary Morris

ec: Quantum Park, via Irwin Gilbert, Esquire