UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-80845-CIV-DIMITROULEAS

QUANTUM PARK PROPERTY OWNERS'
ASSOCIATION, INC., a/k/a QUANTUM PARK
OWNERS ASSOCIATION,,

    Plaintiff,
v.

UNITED STATES LIABILITY INSURANCE
COMPANY,

    Defendant.
_____/

## ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

THIS CAUSE is before the Court on Defendant's Motion for Judgment on the Pleadings [DE 22] (the "Motion"), filed herein on February 17, 2015. The Court has carefully considered the Motion [DE 22], Plaintiff's Response [DE 25], Defendant's Reply [DE 26], and is otherwise fully advised in the premises.

**I.  Background**

Plaintiff, Quantum Park Property Owners' Association, Inc. a/k/a Quantum Park Owners Association ("Quantum"), brought this action for declaratory relief, pursuant to 28 U.S.C. § 2201 and § 2202, against Defendant, United States Liability Insurance Company ("United"), on June 25, 2014. *See* [DE 1].

According the Amended Complaint, Quantum is a Florida not-for-profit corporation, formed to provide oversight and management over the Quantum Corporate Park ("Park"). [DE 20 ¶ 5]. On or about March 22, 2013, Quantum obtained a nonprofit professional liability insurance

1

policy from United (the "Policy"). [*Id.* ¶ 6].

Relevant Policy provisions are as follows:

COVERAGE PART A. NON PROFIT DIRECTORS AND OFFICERS LIABILITY

    I.    INSURING AGREEMENT

        A.  The Company will pay on behalf of the Insured Loss in excess of the RETENTION, not exceeding the Limit of Liability for which this Coverage Part applies, that the Insured shall become legally obligated to pay because of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if applicable, for Wrongful Acts arising solely out of an Insured's duties on behalf of the Organization.

        B.  The Company has the right and duty to defend any Claim to which this insurance applies, even if the allegations of the Claim are groundless, false, or fraudulent.

    III.    DEFINITIONS

        D.  "Defense Costs" means reasonable and necessary legal fees and expenses incurred by the Company, or by any attorney designated by the Company to defend the Insureds, resulting from the investigation, adjustment, defense and appeal of a Claim. Defense Costs includes other fees, costs, costs of attachment or similar bonds (without any obligation on the part of the Company to apply for or furnish such bonds), but does not include salaries, wages, overhead or benefits expenses of the Insured.

        "Loss" means damages, settlements, pre-judgment and post judgment interest awarded by a court and punitive or exemplary damages to the extent such damages are insurable under applicable law, but does not include fines, penalties, taxes, the multiplied portion of any multiple damage award, and other monetary sanctions that are uninsurable by operation of law.

COMMON POLICY CONDITIONS

    II.    DEFENSE AND SETTLEMENT

        A.  The Insured shall not, except at personal cost, make any offer, any payment, admit any liability, settle any Claim, assume any obligation or incur any expense without the Company's written consent. (In relevant part).

        B.  If a Claim is made against an Insured for Loss that is both covered and uncovered by this Policy, the Company will

      pay one hundred percent (100%) of Defense Costs for the
Claim until such time that the Limits of Liability of this
Policy are exhausted by payment of a covered Loss or the
Claim for the covered Loss is resolved by settlement, verdict or summary judgment.

C. The Company, as it deems expedient, has the right to investigate adjust, defend, appeal and, with the consent of the Insured, negotiate the settlement of any Claim whether within or above the Retention. If the Insured refuses to consent to a settlement recommended by the Company, the Company is not obligated to pay any loss or defend any Claim after the Limit of Liability has been exhausted by payment of Loss. The Company's obligation to the Insured for Defense Costs and Loss attributable to such Claim(s) shall be limited to:

    (a) The amount of the covered Loss in excess of the Retention which the Company would have paid in settlement at the time the Insured first refused to settle;

    (b) Plus covered Defense Costs incurred up to the date the Insured first refused to settle;

    (c) Plus seventy five percent (75%) of covered Loss and Defense Costs in excess of the final settlement amount recommended by the Company to which the Insured did not consent. [Text omitted].

    (d) The Insured agrees to cooperate with the Company on all Claims, and provide such assistance and information as the Company may reasonably request. Upon the Company's request, the Insured shall submit to examination and interrogation by a representative of the Company, under oath if required, and shall attend hearings, depositions and trials and shall assist in the conduct of suits, including but not limited to effecting settlement, securing and giving evidence, obtaining the attendance of witnesses, giving written statements to the Company's representatives and meeting with such representatives for the purpose of investigation and/or defense, all of the above without charge to the Company. The Insured further agrees not to take any action which may increase the Insured's or the Company's exposure for Loss or Defense Costs.

D. The Insured agrees to cooperate with the Company on all Claims, . . . The Insured further agrees not to take any action which may increase the Insured's or the Company's exposure for Loss or Defense Costs.

[DE 22 at 4-5; DE 25 at 3-5; DE 20, Exhibit 1].

On or about April 26, 2013, a lawsuit (the "Palm Beach action") was filed in Palm Beach

3

County Circuit Court against Quantum, four members of Quantum's Board of Directors, and hundreds of owners within the Park. [DE 20 ¶ 7].Quantum gave prompt written notice to United of the Palm Beach action, which United acknowledged by letter, which stated, in part:

> Following review of [the Policy] and the allegations asserted against the Insured and it [*sic*] Board members in the Motion, the Company agrees to provide coverage for this Claim, subject to the Policy terms, conditions and provisions.
>
> **Subject to a Reservation of Rights**, the Company will appoint the defense of the Insured and its Board Members to the law firm of Milber, Makris, Plousadis & Seiden ["Milber"] . . . Additionally, no defense costs may be incurred . . . without the company's written consent. If defense costs are incurred . . . we will not be liable for them.

[*Id.* ¶ 8, 9; Exhibit 2]. (Emphasis added.)

The letter went on to note that the company reserves the right to deny coverage at a later time should the claims later be "deemed to fall within the purview" of a policy exclusion which, by its own terms, "does not apply unless and until a final adjudication or judgment is rendered against the Insured" for relevant conduct. [DE 20, Exhibit 2 at 7]. Quantum preferred that Irwin Gilbert of Gilbert & Yarnell and Stanley Klett of Klett, Mesches & Johnson (collectively, "Gilbert") defend it in the action, instead of United's selection, Milber. [DE 20 ¶ 10]. Quantum believed that Gilbert's greater experience with the type of dispute in issue and familiarity with the parties' "long and involved history" would result in more cost-effective representation. [*Id.*]. Quantum informed United of this preference, to which United responded by letter that "[f]or the reasons cited in the Company's reservation of rights letter . . . [it] remain[ed] committed to appointing counsel . . . through the Milber firm." [*Id.* ¶ , Exhibit 3]. United's letter further cautioned that should Quantum persist in retaining Gilbert instead of Milber, United would not be liable for any defense costs incurred without United's written consent, including "any defense services" incurred through Gilbert, which would rather be at Quantum's "personal expense." [*Id.*]. The parties continued to

4

correspond, with Gilbert providing litigation updates and demand for payment, and United refusing to so provide. [*Id.*¶¶ 12-14]. United did not respond to Quantum's most recent, June 2014, attempt to obtain payment for the Gilbert fees and costs, prompting this action. [*Id.* ¶ 14].

As of the date of the Amended Complaint, Quantum has incurred over $200,000 in fees and costs to Gilbert. [*Id.* ¶ 11]. Quantum contends that once United offered Quantum's defense in the Palm Beach action under reservation of rights, United forfeited to Quantum the right to control that defense, including the right to select counsel (i.e., Gilbert), but maintained the obligation of paying defense costs pursuant to the policy. [*Id.* ¶ 17]. Quantum seeks declaratory judgment that United must reimburse all attorney's fees and costs incurred through Gilbert in the Palm beach action, must continue to pay all such defense fees and costs going forward, up to the limits specified in the policy, and must pay Quantum's attorney's fees incurred in this action pursuant to Fla. Stat. § 627.428.

**II. Standard of Review**

Federal Rule of Civil Procedure 12(c) states: "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A Rule 12(c) motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss; on a motion for judgment on the pleadings, a court must make all inferences in favor of the nonmoving party and must accept as true the facts alleged in the complaint. *See Guarino v. Wyeth LLC,* 823 F.Supp.2d 1289, 1291 (M.D. Fla. 2011) (quoting *Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir.1998)). A motion to dismiss and a motion for judgment on the pleadings should be granted if "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Losey v. Warden*, 12-16363, 2013 WL 2450736 (11th Cir. June 4, 2013) (quoting *Horsley v. Feldt*, 304

F.3d 1125, 1131 (11th Cir.2002)). Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *See United States v. Bahr*, 275 F.R.D. 339, 340 (M.D. Ala. 2011) (citing *Mergens v. Dreyfoos*, 166 F.3d 1114, 1116–17 (11th Cir.1999)). A court may consider documents attached to the pleadings as long as they are (1) central to the plaintiff's claim and (2) undisputed, in the sense that their authenticity is not challenged. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).[1]

### III. Discussion

United argues that the terms of the Policy give it the right, in addition to the duty, to control the defense of a suit seeking covered damages against its insured. United points to the Policy language stating that it has the "**right** and duty **to defend** any Claim to which this insurance applies," that "defense costs" per the Policy are defined as "reasonable and necessary legal expenses incurred by [United], or **by any attorney designated by the Company to defend the Insured**, resulting from the . . . defense . . . of a Claim," and that the "Insured shall not, **except at personal cost**, . . . assume any . . . expense without [United's] written consent." (Emphasis added). Accordingly, United asserts that the Policy affords it the right to defend the Palm Beach action, that covered expenses include attorney fees incurred by an attorney designated by United, and that any other expense incurred without United's written consent was incurred at Quantum's personal cost.

Under Florida Law, "an insurer's duty to defend is separate and distinct from its duty to indemnify, and is more extensive." *First Am. Title Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 695 So. 2d 475, 476 (Fla. 3d DCA 1997). An insurer's duty to defend is not

---

[1] As the attachments to the Amended Complaint, consisting of relevant correspondence and the Policy itself, are both central to Quantum's claim and not disputed in their authenticity by United, the Court may consider them in the analysis of United's Motion. *See Horsley*, 304 F.3d at 1134.

breached where it provides a defense under reservation of rights ("ROR"). *Id.* Construing all factual disputes in favor of Quantum, the Court does not find that United breached its duty to defend when it offered a defense under reservation of rights, nor does Quantum seem to suggest that it did. *See* [DE 25 at 9]. Instead, Quantum simply maintains that it became empowered to reject United's defense and launch its own defense when United offered the defense under ROR.[2]

Quantum grounds its argument that it is entitled to the requested relief in the principles articulated in *Safeco* and its progeny. In *Safeco*, the insurer withdrew its tendered defense, under reservation of rights, upon prevailing in summary judgment on the issue of coverage. *Taylor v. Safeco Ins. Co.*, 361 So. 2d 743, 744 (Fla. 1st DCA 1978). Shortly thereafter, upon appeal of the coverage decision and on the eve of trial, the insurer retendered its defense, subject to the continuing right to contest coverage. *Id.* The insured rejected the retendered defense, subsequently consenting to a "substantial judgment" without the consent of the insurer. *Id.* The coverage decision was thereafter reversed on appeal. The insurer argued that it was no longer liable to the insured, as the insured had violated the policy's requirement that the insured cooperate in the insurer's defense. *Id.* at 745. The court held that, assuming that coverage was appropriate, the insurer would be liable for the reasonable amount of settlement up to the policy limits. *Id.* at 747. The court explained that "[j]ust as the insurer is not required to abandon its contest of a duty to pay as a condition of fulfilling an assumed or admitted duty to defend, the insured is not required to abandon control of his own defense as the price of preserving his claim, disputed by the insurer, that the insurer pay any judgment." *Id.* at 745.

---

[2] United addresses the possible alternate theory that its tendered counsel was inadequate, thereby entitling Quantum to retain its own, adequate counsel. However, in the Amended Complaint Quantum does not seek such a declaration, nor do the factual allegations in the Complaint, namely that Milber had less experience with the type of dispute in issue and knew less about the parties "long and involved history" than Gilbert, provide a sufficient basis to conclude that Milber was inadequate even if taken as true.

United concludes that the principle articulated in *Safeco* only applies where coverage has been unequivocally denied but the insurer still offers a defense. United argues that the present case is distinguishable because there was not an unequivocal denial, but rather the mere articulated possibility that some of the claims may be subject to a coverage exclusion depending on the ultimate outcome of the Palm Beach action. Quantum argues that each case cited by United in support of its argument is distinguishable. The Court need not reach this issue, as even resolving this issue in favor of Quantum and assuming that Quantum properly rejected United's defense under ROR and that that rejection vested in Quantum the right to control its own defense, the Court still does not find that Quantum is entitled to the declaratory relief it seeks.

United argues that even if Quantum was entitled to reject United's tendered defense under ROR and hire its own counsel, United would not be required to reimburse Quantum for the attorneys' fees and costs incurred. United contends that the only case that would support such a proposition is *Nationwide Mut. Fire Ins. Co. v. Belville*, 825 So. 2d 999, 1001 (Fla. 4th DCA 2002), which it asserts was wrongly decided, pointing to the district court opinion in *Royal Oak* in support. In *Royal Oak*, the district court avoided the precise issue at hand, reasoning that:

> [W]hen an insurer offers to defend under a reservation of rights, Florida law provides that the insured may, at its election, reject the defense and retain its own attorneys without jeopardizing its right to seek indemnification from the insurer for liability. . . [N]either *Taylor v. Safeco* nor any other Florida case stands for the proposition that an insured may recover attorney's fees and costs after rejecting a defense under a reservation of rights. *Taylor v. Safeco* held only that the insured would not jeopardize the right to seek indemnification if it did so. . . [E]ven if fees and costs are appropriate where an insured rejects a defense under a reservation of rights, the insured must actually *reject* that defense.

*Travelers Indem. Co. of Illinois v. Royal Oak Enterprises, Inc.*, 344 F. Supp. 2d 1358, 1370-71 (M.D. Fla. 2004) aff'd sub nom. *Travelers Indem. Co. of Ill. v. Royal Oak Enterprises*, Inc., 171 F. App'x 831 (11th Cir. 2006).

8

The Court does not find that even *Belville* controls here, because, as the *Royal Oak* court also found, it dealt with CAFA,[3] and moreover, "the penalty for a violation of the Claims Administration Statute is not an award of attorney's fees and costs, as the *Beville* court suggests, but the preclusion of 'coverage defenses'. . . .[and] a defense under a reservation of rights, by itself, is not a breach of the duty to defend." *Id.*

The only case this Court could locate that explicitly supports the proposition that even upon the rightful rejection of a defense under ROR an insured is entitled to attorney's fees and costs is *Bellsouth*, in which the court stated in dicta that "when an insurer agrees to defend under a reservation of rights or refuses to defend, the insurer transfers to the insured the power to conduct its own defense, and if it is later determined that the insured was entitled to coverage, the insured will be entitled to full reimbursement of the insured's litigation costs." *BellSouth Telecommunications, Inc. v. Church & Tower of Florida, Inc*., 930 So. 2d 668, 670-71 (Fla. 3d DCA 2006). However, in support *Bellsouth* cited: (1) *Royal Oak*, which does not firmly support that proposition; (2) *Belville*, which for reasons already articulated does not apply; (3) *Aguero v. First Am. Ins. Co*., 927 So. 2d 894, 898 (Fla. 3d DCA 2005), which merely cites *Royal Oak* for the proposition that an insured may be entitled to retain its own attorney upon rejecting a defense under ROR without throwing into doubt the insured's right to indemnification; and (4) *Florida Ins. Guar. Ass'n, Inc. v. All The Way With Bill Vernay, Inc*., 864 So. 2d 1126, 1129 (Fla. 2d DCA

---

[3] United states that it is not subject to the requirements of the Florida Claims Administration Statute ("FCAS"), Fla. Stat. 627.426. United concedes that had it raised a "coverage defense," such as a defense based on late notice, that it would have had to defend the Palm Beach action through mutually agreeable counsel, pursuant to Fla. Stat. 627.426(2)(b)(3), if it chose to defend the suit. However, United contends that this provision is not applicable as it did not raise a coverage defense, but rather simply required that Quantum abide by the conditions imposed by the Policy (e.g., cooperation of the insured, insurer selects defense counsel). "Coverage defense" has been defined by the Supreme Court of Florida as a "defense to coverage that otherwise exists," and does not include "a disclaimer of liability based on a complete lack of coverage for the loss sustained." *AIU Ins. Co. v. Block Marina Inv., Inc.*, 544 So. 2d 998, 1000 (Fla. 1989). The Court agrees that CAFA does not apply in this case.

2003), in which the insurer had breached the insurance contract by fully refusing to provide a defense, even under ROR, from the outset. In any event, the *Bellsouth* language hinges on the subsequent determination that the insured is entitled to coverage, and Quantum seeks, regardless of the unanswered question of coverage, declaratory judgment that United must pay Gilbert's fees and costs thus far and going forward. Having failed to supply a legal basis for such relief, Quantum's requested declaratory relief is not warranted.[4]

## IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Motion [DE 22] is **GRANTED**;

2. The Clerk is directed to **CLOSE** this case and **DENY** any pending motions as moot.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 26th day of March 2015.

*/s/ William P. Dimitrouleas*
WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Counsel of record

---

[4] As the Court finds that Quantum is not entitled to a declaration that United must reimburse all attorney's fees and costs incurred through Gilbert in the Palm beach action, and must continue to pay all such defense fees and costs going forward, up to the limits specified in the policy, Quantum is consequently not entitled to a declaration that United must pay Quantum's attorney's fees incurred in this action pursuant to Fla. Stat. § 627.428, as that statute applies only where the insured or named beneficiary prevails in the suit.